## BOIRE, REGIONAL DIRECTOR, TWELFTH RE-GION, NATIONAL LABOR RELATIONS BOARD, *v.* GREYHOUND CORPORATION.

No. 77. Argued February 17, 1964.—Decided March 23, 1964.

*Norton J. Come* argued the cause for petitioner. With him on the brief were *Solicitor General Cox, Arnold Ordman, Dominick L. Manoli* and *Herman M. Levy.*

*Warren E. Hall, Jr.* argued the cause and filed a brief for respondent.

*I. J. Gromfine* and *Herman Sternstein* filed a brief for the Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, AFL–CIO, as *amicus curiae,* urging reversal.

*Alexander E. Wilson, Jr.* filed a brief for Floors, Inc., as *amicus curiae,* urging affirmance.

MR. JUSTICE STEWART delivered the opinion of the Court.

The Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, AFL–CIO (the Union) filed an amended petition with the National Labor Relations Board pursuant to § 9 (c) of the National Labor Relations Act,[1] requesting a representation election among the porters, janitors and maids working at four Florida bus terminals operated by the respondent (Greyhound). The amended petition designated the "employer" of the employees sought to be represented

---

[1] Section 9 (c) of the National Labor Relations Act, as amended, 29 U. S. C. § 159 (c), provides in pertinent part:

"(1) Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—

"(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented for collective bargaining and that their employer declines to recognize their representative as the representative defined in subsection (a) of this section, or (ii) assert that the individual or labor organization, which has been certified or is being currently recognized by their employer as the bargaining representative, is no longer a representative as defined in subsection (a) of this section; or

"(B) by an employer, alleging that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative defined in subsection (a) of this section;

"the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof."

as Greyhound and Floors, Inc. The latter, a corporation engaged in the business of providing cleaning, maintenance and similar services to various customers in Florida, had contracted with Greyhound to provide such services at the four terminals in question.

At the Board hearing on the petition, the Union contended alternatively that the unit requested was appropriate as a residual unit of all unrepresented Greyhound employees at the four terminals—on the ground that Greyhound was at least a joint employer with Floors of the employees—or that the unit was appropriate because the employees comprised a homogeneous, distinct group. Greyhound and Floors claimed that the latter was the sole employer of the employees, and that the appropriate bargaining unit should therefore encompass all Floors' employees, either in all four cities in which the terminals are located, or in separate groups.

The Board found that while Floors hired, paid, disciplined, transferred, promoted and discharged the employees, Greyhound took part in setting up work schedules, in determining the number of employees required to meet those schedules, and in directing the work of the employees in question. The Board also found that Floors' supervisors visited the terminals only irregularly—on occasion not appearing for as much as two days at a time—and that in at least one instance Greyhound had prompted the discharge of an employee whom it regarded as unsatisfactory. On this basis, the Board, with one member dissenting, concluded that Greyhound and Floors were joint employers, because they exercised common control over the employees, and that the unit consisting of all employees under the joint employer relationship was an appropriate unit in which to hold an election. The Board thereupon directed an election to determine whether the employees desired to be represented by the Union.

Shortly before the election was scheduled to take place, Greyhound filed this suit in the United States District Court for the Southern District of Florida, seeking to set aside the decision of the Board and to enjoin the pending election. After a hearing, the court entered an order permanently restraining the election. 205 F. Supp. 686. Concluding that it had jurisdiction on the basis of this Court's decision in *Leedom* v. *Kyne,* 358 U. S. 184, the court held on the merits that the Board's findings were insufficient as a matter of law to establish a joint employer relationship, that those findings established, as a matter of law, that Floors was the sole employer of the employees in question, and that the Board had therefore violated the National Labor Relations Act by attempting to conduct a representation election where no employment relationship existed between the employees and the purported employer. The Court of Appeals affirmed, 309 F. 2d 397, and we granted certiorari to consider a seemingly important question of federal labor law. 372 U. S. 964. We reverse the judgment of the Court of Appeals.

Both parties agree that in the normal course of events Board orders in certification proceedings under § 9 (c) are not directly reviewable in the courts. This Court held as long ago as *American Federation of Labor* v. *Labor Board,* 308 U. S. 401, that the "final order[s]" made reviewable by §§ 10 (e) and (f)[2] in the Courts of

---

[2] Section 10 of the National Labor Relations Act, as amended, 29 U. S. C. § 160, provides in pertinent part:

"(e) The Board shall have power to petition any court of appeals of the United States, or if all the courts of appeals to which application may be made are in vacation, any district court of the United States, within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2112 of Title 28. . . . [*Footnote 2 continued on p. 477*]

Appeals do not include Board decisions in certification proceedings. Such decisions, rather, are normally reviewable only where the dispute concerning the correctness of the certification eventuates in a finding by the Board that an unfair labor practice has been committed as, for example, where an employer refuses to bargain with a certified representative on the ground that the election was held in an inappropriate bargaining unit. In such a case, § 9 (d) of the Act makes full provision for judicial review of the underlying certification order by providing that "such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed" in the Court of Appeals.[3]

That this indirect method of obtaining judicial review imposes significant delays upon attempts to challenge the validity of Board orders in certification proceedings is obvious. But it is equally obvious that Congress ex-

"(f) Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside."

[3] Section 9 (d) of the National Labor Relations Act, 29 U. S. C. § 159 (d), provides in pertinent part:

"Whenever an order of the Board made pursuant to section 160 (c) . . . is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section and there is a petition for the enforcement or review of such order, such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed under subsection (e) or (f) . . . , and thereupon the decree of the court enforcing, modifying, or setting aside in whole or in part the order of the Board shall be made and entered upon the pleadings, testimony, and proceedings set forth in such transcript."

plicitly intended to impose precisely such delays.   At the time of the original passage of the National Labor Relations Act in 1935, the House Report clearly delineated the congressional policy judgment which underlay the restriction of judicial review to that provided for in § 9 (d):

> "When an employee organization has built up its membership to a point where it is entitled to be recognized as the representative of the employees for collective bargaining, and the employer refuses to accord such recognition, the union, unless an election can promptly be held to determine the choice of representation, runs the risk of impairment of strength by attrition and delay while the case is dragging on through the courts, or else is forced to call a strike to achieve recognition by its own economic power. Such strikes have been called when election orders of the National Labor Relations Board have been held up by court review." [4]

And both the House [5] and the Senate Reports [6] spelled out the thesis, repeated on the floor, that the purpose of

---

[4] H. R. Rep. No. 972, 74th Cong., 1st Sess., 5.

[5] ". . . Section 9 (d) of the bill makes clear that there is to be no court review prior to the holding of the election, and provides an exclusive, complete, and adequate remedy whenever an order of the Board made pursuant to section 10 (c) is based in whole or in part upon facts certified following an election or other investigation pursuant to section 9 (c).   The hearing required to be held in any such investigation provides an appropriate safeguard and opportunity to be heard.   Since the certification and the record of the investigation are required to be included in the transcript of the entire record filed pursuant to section 10 (e) or (f), the Board's actions and determinations of fact and law in regard thereto will be subject to the same court review as is provided for its other determinations under sections 10 (b) and 10 (c)."   H. R. Rep. No. 972, 74th Cong., 1st Sess., 20–21.                    [*Footnote 6 is on p. 479*]

§ 9 (d) was to provide "for review in the courts only after the election has been held and the Board has ordered the employer to do something predicated upon the results of the election." [7] Congressional determination to restrict judicial review in such situations was reaffirmed in 1947, at the time that the Taft-Hartley amendments were under consideration, when a conference committee rejected a House amendment which would have permitted any interested person to obtain review immediately after a certification [8] because, as Senator Taft noted, "such provision would permit dilatory tactics in representation proceedings." [9]

In light of the clear import of this history, this Court has consistently refused to allow direct review of such orders in the Courts of Appeals. *American Federation of Labor* v. *Labor Board, supra.* In two cases, however, each characterized by extraordinary circumstances, our decisions have permitted district court review of orders

---

[6] "Section 9 (d) makes it absolutely clear that there shall be no right to court review anterior to the holding of an election. An election is the mere determination of a preliminary fact, and in itself has no substantial effect upon the rights of either employers or employees. There is no more reason for court review prior to an election than for court review prior to a hearing. But if subsequently the Board makes an order predicated upon the election, such as an order to bargain collectively with elected representatives, then the entire election procedure becomes part of the record upon which the order of the Board is based, and is fully reviewable by any aggrieved party in the Federal courts in the manner provided in section 10. And this review would include within its scope the action of the Board in determining the appropriate unit for purposes of the election. This provides a complete guarantee against arbitrary action by the Board." S. Rep. No. 573, 74th Cong., 1st Sess., 14.

[7] 79 Cong. Rec. 7658.

[8] See H. R. Rep. No. 245, 80th Cong., 1st Sess., 43; H. R. Rep. No. 510, 80th Cong., 1st Sess., 56–57.

[9] 93 Cong. Rec. 6444.

entered in certification proceedings. In *Leedom* v. *Kyne,*
358 U. S. 184, despite the injunction of § 9 (b)(1) of the
Act that "the Board shall not (1) decide that any unit
is appropriate . . . if such unit includes both profes-
sional employees and employees who are not professional
employees unless a majority of such professional em-
ployees vote for inclusion in such unit," the Board—
without polling the professional employees—approved as
appropriate a unit containing both types of employees.
The Board conceded in the Court of Appeals that it "had
acted in excess of its powers and had thereby worked
injury to the statutory rights of the professional em-
ployees." 358 U. S., at 187. We pointed out there that
the District Court suit was "not one to 'review,' in the
sense of that term as used in the Act, a decision of the
Board made within its jurisdiction. Rather it is one to
strike down an order of the Board made in excess of its
delegated powers and contrary to a specific prohibition
in the Act." 358 U. S., at 188. Upon these grounds
we affirmed the District Court's judgment setting aside the
Board's "attempted exercise of [a] power that had been
specifically withheld." 358 U. S., at 189. And in *McCul-
loch* v. *Sociedad Nacional,* 372 U. S. 10, in which District
Court jurisdiction was upheld in a situation involving
the question of application of the laws of the United
States to foreign-flag ships and their crews, the Court
was careful to note that "the presence of public questions
particularly high in the scale of our national interest
because of their international complexion is a uniquely
compelling justification for prompt judicial resolution of
the controversy over the Board's power. No question of
remotely comparable urgency was involved in *Kyne,*
which was a purely domestic adversary situation. The
exception recognized today is therefore not to be taken
as an enlargement of the exception in *Kyne.*" 372 U. S.,
at 17.

The respondent makes no claim that this case is akin to *Sociedad Nacional*. The argument is, rather, that the present case is one which falls within the narrow limits of *Kyne,* as the District Court and the Court of Appeals held. The respondent points out that Congress has specifically excluded an independent contractor from the definition of "employee" in § 2 (3) of the Act.[10] It is said that the Board's finding that Greyhound is an employer of employees who are hired, paid, transferred and promoted by an independent contractor is, therefore, plainly in excess of the statutory powers delegated to it by Congress. This argument, we think, misconceives both the import of the substantive federal law and the painstakingly delineated procedural boundaries of *Kyne.*

Whether Greyhound, as the Board held, possessed sufficient control over the work of the employees to qualify as a joint employer with Floors is a question which is unaffected by any possible determination as to Floors' status as an independent contractor, since Greyhound has never suggested that the employees themselves occupy an independent contractor status. And whether Greyhound possessed sufficient indicia of control to be an "employer" is essentially a factual issue, unlike the question in *Kyne,* which depended solely upon construction of the statute. The *Kyne* exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law. Judicial review in such a situation has been limited by Congress to the courts of appeals, and

---

[10] Section 2 (3) of the National Labor Relations Act, as amended, 29 U. S. C. § 152 (3). The effect of this provision was to overrule *Labor Board* v. *Hearst Publications,* 322 U. S. 111. See H. R. Rep. No. 245, 80th Cong., 1st Sess., 18.

then only under the conditions explicitly laid down in § 9 (d) of the Act.

Accordingly, the judgment of the Court of Appeals is reversed and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE DOUGLAS dissents.