**MIAMI FOUNDRY CORPORATION, Ravenna Industries, Inc., and A. C. Williams Company, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**International Molders and Allied Workers Union, Local No. 45, AFL–CIO, Intervenor.**

No. 80–1731.

United States Court of Appeals, Sixth Circuit.

July 7, 1982.

Sidney C. Foster, Jr., Brouse & McDowell, John W. Solomon, Akron, Ohio, for petitioners.

Elliott Moore, Deputy Associate Gen. Counsel, John Elligers, N. L. R. B., Washington, D. C., Thomas Phalen, Cincinnati, Ohio, for respondent.

Before MERRITT, Circuit Judge, and PHILLIPS and CELEBREZZE, Senior Circuit Judges.

## ORDER

Miami Foundry encountered severe financial difficulties throughout the latter part of the 1970's, culminating in a decision by President Robert Tormey to sell 59% of Miami's stock to the A. C. Williams Co. in early March 1978. Approximately one week before the stock sale, Tormey terminated all of Miami's employees, shut down the foundry, and closed its doors. Under the new arrangement, Miami had new management and rented its facilities to Ravenna Industries, Inc., a wholly-owned subsidiary of A. C. Williams Co. in return for 3.5% of Ravenna's gross revenues earned in casting. Miami received a 3% commission for any orders it procured for Ravenna, and had an option to cease as a renting entity and resume as an operating foundry, an option exercised by Miami after a year.

The International Molders and Allied Workers Union, Local No. 45, AFL–CIO, who had represented Miami workers for 30 years, were given no opportunity to negotiate either the mass termination or its effect on the workers. Only six of Miami's employees were hired by Ravenna, in spite of a 1977 labor agreement in effect at the time. On March 16, six days after operations at the foundry resumed under Ravenna, Miami's new president informed the union that the 1977 bargaining agreement would not be honored. The union requested bargaining as to the termination of the employees and severance pay on March 28. The union was informed that they would not be recognized by any of the three companies on May 19.

Charges of unfair labor practices were filed by the union July 12, 1978. The Board adopted the findings of the Administrative Law Judge that the three companies had violated §§ 8(a)(1) and 8(a)(5) of the National Labor Relations Act and ordered them to cease and desist their unfair labor practices, recognize and bargain with the union, offer full and immediate reinstatement with backpay to Miami employees terminated February 28, and post an appropriate notice. We affirm.

Miami, A. C. Williams, and Ravenna urge this Court to reverse the Board on their threshold ruling that the operations of the three companies are so integrated as to

constitute a single employer. Once that finding is accepted, they admit, it is clear that the 1977 bargaining agreement continued in full force throughout the merger of the three companies, that the employees were unlawfully terminated, and that the companies wrongfully refused to recognize and bargain with the union.

Positing their argument on "economic realities," the companies emphasize the long-term deterioration of Miami's finances and the ten-day shutdown of Miami. The assets of the company were so encumbered that no company would want them. Miami's *only* saleable asset, they argue, was a tax loss carryover, an asset that could be best realized under applicable IRS guidelines through a transfer of 59% of Miami's stock. The companies rely heavily on *MPE Inc., Teamsters Union Local No. 970*, 226 NLRB No. 79 (1976) for their argument that a transfer of stock can be treated as a transfer of assets for purposes of determining whether a new corporation is a successor or a continuation of a previous company.

*MPE*, however, is easily distinguished. In that case, the Board found at the threshold that the new company completely substituted for the old, and that the old was no longer in existence. After that initial finding, the Board examined the transfer of 100% of the stock and concluded that, under the circumstances of that case, it was equivalent to a sale of all assets.

In the case before us, the ALJ found, and the Board agreed, that Miami, A. C. Williams, and Ravenna Inc. were a joint employer. Miami never ceased as a business entity and its obligations under the 1977 agreement, therefore, never ceased. The record supports the finding that negotiations for the sale were reinitiated the day before Miami employees were informed of their termination. The record also shows that Miami owner Robert Tormey still owned 41% of the stock and that Miami remained alive throughout the ten-day shutdown and subsequent operations, and became increasingly active in the enterprise.

We do not doubt that "economic realities" dictated the arrangements which resulted in Miami acting as a tax loss carryover for the A. C. Williams Co. The companies, however, would have us hold that Miami still exists for tax purposes but does not exist for purposes of the labor agreement with Miami workers. We decline to so hold. A company seeking the substantial benefits of a tax loss must accept the obligations arising out of the arrangement. The NLRB correctly applied the relevant factors to determine that the three companies were a joint employer. That finding is a factual one and need only be supported by substantial evidence. *Boire v. Greyhound Corp.*, 376 U.S. 473, 481, 84 S.Ct. 894, 898, 11 L.Ed.2d 849 (1964). There is ample evidence on this record to support such a finding.

Accordingly, the order of the Board is affirmed.