DiMUCCI CONSTRUCTION CO., Wheeling Construction Co., and Semi Builders, Inc., Petitioners/Cross–Respondents,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner,

and

International Union of Operating Engineers, Local 150, AFL–CIO, Intervenor.

Nos. 93–2555, 93–2862.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 1994.

Decided May 17, 1994.

Gerard C. Smetana (argued), Robert J. Wittebort, Jr., Smetana & Avakian, Chicago, IL, for DiMucci Const. Co.

James V. Daffada, David E. Goodrich, Goodrich & Daffada, Chicago, IL, for Wheeling Const. Co.

Robert G. Prorak, Chicago, IL, for Semi-Builders, Inc.

John C. Truesdale, Richard A. Cohen, N.L.R.B., Contempt Litigation Branch, Washington, DC, Elizabeth Kinney, Linda McCormick, N.L.R.B., Region 13, Chicago, IL, Aileen A. Armstrong, Frederick Havard, Peter D. Winkler, Marilyn O'Rourke (argued), N.L.R.B., Appellate Court, Enforcement Litigation, Washington, DC, for N.L.R.B.

Louis E. Sigman (argued), Dale D. Pierson, Pasquale A. Fioretto, Brian C. Hlavin, Baum, Sigman, Auerbach, Pierson & Neuman, Chicago, IL, for Intern. Union of Operating Engineers, Local 150, AFL-CIO.

Before COFFEY and FLAUM, Circuit Judges, and MORAN, District Judge.*

MORAN, District Judge.

Petitioners DiMucci Construction Company ("DiMucci"), Wheeling Construction Company ("Wheeling") and Semi Builders, Inc. ("Semi") seek review of a National Labor Relations Board ("NLRB" or "the Board") decision which affirmed an administrative law judge's ("ALJ") decision and adopted the ALJ's order in this unfair labor practice dispute. The NLRB has cross-petitioned for enforcement of its order, which was issued against DiMucci, Wheeling and Semi, as joint employers. The International Union of Operating Engineers, Local 150 ("the Union"), intervened in this matter, requesting that this court enforce the NLRB's decision and deny the DiMucci/Wheeling/Semi petition. For the reasons discussed below, we order enforcement of the NLRB's order.

## I

This case came before the ALJ after DiMucci and Wheeling allegedly violated a settlement agreement that had been entered on May 7, 1990. This agreement was reached in the face of allegations that DiMucci and Wheeling, as joint employers, had committed numerous unfair labor practices in their efforts to keep their employees from organizing and joining the Union, including discharging employees and failing to recall employees because of their union sympathies.[1] The agreement required joint employers DiMucci and Wheeling to make whole employees Berry, Stone, Sumrall and Cederstrom by payment of certain sums of money. DiMucci and Wheeling represented to the ALJ that they were no longer doing excavation and sewer construction work and, as a result, they were not in a position to offer reinstatement to Beery, Stone, Sumrall or Cederstrom, all of whom performed that type of work. Accordingly, reinstatement was not provided for in the settlement agreement.

The agreement did provide that DiMucci and Wheeling would post a notice to employees which included the following provision:

WE WILL offer preferential hire to Russell Stone, Fred Beery, Tommy Sumrall, and Larry Cederstrom to their former positions, or if their former positions no longer exist, to substantially equivalent positions, without prejudice, if DiMucci Construction Co. and/or Wheeling Construction Co., jointly or severally, go back into the business of being an excavating or sewer contractor within the next 18 months from the date of the Regional Director's approval of this Settlement Agreement.

The agreement also provided that DiMucci and Wheeling would not, for those 18 months, subcontract or contract for excavation or sewer construction work with any employer that is a joint employer with either DiMucci or Wheeling.

The Union filed a charge with the NLRB on August 15, 1990, which it amended on November 7, 1990, alleging that DiMucci and Wheeling, as joint employers of Semi's employees, had gone back into the excavation and sewer construction business without offering preferential hire to Beery, Stone, Sumrall and Cederstrom. After investigating the charge, the Regional Director set aside the settlement agreement, reissued the prior consolidated complaints against DiMucci and Wheeling, and issued a new complaint (case 13–CA–29659). The new complaint alleged that DiMucci, Wheeling and Semi were joint employers of Semi's employees and that, as such, DiMucci and Wheeling were engaging in excavation construction and were doing so without having recalled employees Beery, Stone, Sumrall and Cederstrom. The new complaint further alleged that the failure to recall the four employees in accordance with the settlement agreement was because of their union activities and therefore violative of sections 8(a)(3) and 8(a)(1) of the National Labor Relations Act ("the Act").

---

* The Honorable James B. Moran, Chief Judge of the Northern District of Illinois, is sitting by designation.

1. Specifically, it was alleged that DiMucci/Wheeling discharged employees Fred Beery and Russell Stone because they supported the Union and that they unlawfully failed to recall employees Tom Sumrall and Larry Cederstrom from layoff because they supported the Union.

The new complaint was consolidated with the prior consolidated complaints.

At the opening of the unfair labor practice hearing on the final consolidated complaint, DiMucci and Wheeling admitted that they were joint employers. DiMucci and Wheeling denied both committing the unfair labor practices alleged in the original pre-settlement consolidated complaints and violating the settlement agreement. However, they subsequently amended their answer and, for the purpose of litigating the issues raised in case 13–CA–29659, admitted all of the allegations in the prior complaints. In its answer, Semi denied committing the unfair labor practices alleged in case 13–CA–29659.

Pursuant to the admissions DiMucci and Wheeling made with respect to the pre-settlement complaint allegations, the ALJ found that they violated section 8(a)(1) of the Act in a number of ways: promising a wage increase and wage incentive plan to discourage union support; creating the impression that employees' union activities were under surveillance; creating the impression that attempts to unionize would be futile; interrogating employees, impliedly threatening employees with discharge; threatening employees with reprisal, including loss of jobs, discharge and layoff; and granting wage increases to employees for the purpose of discouraging union support. Also pursuant to these admissions, the ALJ found that DiMucci and Wheeling had violated sections 8(a)(3) and 8(a)(1) of the Act by failing to recall employees Sumrall and Cederstrom from layoff and by discharging employees Beery and Stone.

Based on the evidence presented at the hearing with respect to the allegations in 13–CA–29659, the ALJ found that since at least April 30, 1990, DiMucci, Wheeling and Semi engaged in excavation work as joint employers of Semi's employees. The ALJ further found that joint employers DiMucci, Wheeling and Semi failed to recall the four employees as required under the settlement agreement because those employees supported the Union. Accordingly, the ALJ found that the failure to recall the employees violated sections 8(a)(3) and 8(a)(1) of the Act. This decision was issued on April 9, 1992. DiMuc-

ci, Wheeling and Semi filed exceptions to the ALJ's decision with the NLRB. On May 28, 1993, the NLRB affirmed the ALJ's rulings, findings and conclusions in their entirety and adopted the ALJ's recommended order. This appeal followed.

## II

Petitioners' first contention on appeal is that the Board erred in finding that DiMucci, Wheeling and Semi were joint employers of Semi's employees. Petitioners maintain that the ALJ applied the wrong standard in determining whether a joint employer relationship existed—that the ALJ erred by focusing on general control and control over day-to-day activities instead of commonality of labor relations. Moreover, petitioners argue that the ALJ should not have credited the testimony of Jeffrey Wilt. Thus, petitioners allege that the Board's adoption of the ALJ's findings and recommended order was erroneous.

■ DiMucci, Wheeling and Semi could be considered joint employers if DiMucci and Wheeling exerted significant control over Semi's employees. *N.L.R.B. v. Western Temporary Serv., Inc.,* 821 F.2d 1258, 1266 (7th Cir.1987). This issue is essentially a factual question. *Boire v. Greyhound Corp.,* 376 U.S. 473, 481, 84 S.Ct. 894, 898, 11 L.Ed.2d 849 (1964); *G. Heileman Brewing Co. v. N.L.R.B.,* 879 F.2d 1526, 1531 (7th Cir.1989). Factors to consider in determining joint employer status are (1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions. *G. Heileman,* 879 F.2d at 1531; *W.W. Grainger, Inc. v. N.L.R.B.,* 860 F.2d 244, 247 (7th Cir.1988).

■ Because the issue of joint employer status is a factual determination, we must uphold the Board's finding so long as it is supported by substantial evidence on the record as a whole. 29 U.S.C. § 160(e); *N.L.R.B. v. Western Temporary Serv., Inc.,* 821 F.2d 1258, 1266 (7th Cir.1987). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477, 71 S.Ct. 456, 458, 95 L.Ed. 456 (1951); *Roadmaster Corp. v. N.L.R.B.*, 874 F.2d 448, 452 (7th Cir.1989). We must accept the ALJ's and Board's credibility determinations unless the petitioners can demonstrate that exceptional circumstances warrant a different result. See *Roadmaster*, 874 F.2d at 453 n. 4; *N.L.R.B. v. Dorothy Shamrock Coal Co.*, 833 F.2d 1263, 1265 (7th Cir.1987). We conclude that there is substantial evidence to support the Board's determination that DiMucci, Wheeling and Semi were joint employers of Semi's employees.

■ Petitioners maintain that the ALJ's finding of joint employer status was erroneous. They argue that the ALJ should have focused on commonality of labor relations, not general control or control over day-to-day activities. We conclude, however, that the ALJ employed the proper analysis. The ALJ applied the standard set forth in *Boire v. Greyhound Corp.*, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), in determining that DiMucci, Wheeling and Semi were joint employers. Under *Boire*, an employer can be considered a joint employer if it "possessed sufficient control over the work of the employees to qualify as a 'joint employer' with the [actual employer]." *Id.* at 481, 84 S.Ct. at 898. The ALJ found that Wheeling's General Superintendent, Ron Dunbar, acting on behalf of Wheeling and DiMucci, and with Semi's assent, assigned and directed the work of Semi's excavation employees and controlled their movement between the construction sites. Dunbar did this regularly, on a daily basis, and without consulting Semi. It was Dunbar who gave the Semi employees their daily work assignments, not Semi's manager Pietro Camaci. Camaci did not even go to the jobsite on a daily basis. The ALJ also noted that several employees left Wheeling to perform excavation work for Semi and that these employees were treated as though they were still employed by Wheeling. For example, former Wheeling employee Jeffrey Wilt testified that he sought Dunbar's permission for an injury-related leave and that, upon return from this leave, he was required to furnish Dunbar

with a doctor's release. In addition, Dunbar told Wilt that he was pleased with his work performance and that he was going to give Wilt a wage increase. This wage increase was reflected on Semi's payroll the following week. The ALJ held that, because of the high level of control Dunbar exercised over Semi's employees, DiMucci, Wheeling and Semi were to be considered joint employers of those employees. The ALJ did not cite any Seventh Circuit authority in finding that a joint employer relationship existed, but the factors he relied upon correspond to those set forth in *W.W. Grainger*: supervision of day-to-day activities, promulgation of conditions of employment and issuance of work assignments. See *W.W. Grainger*, 860 F.2d at 247. Accordingly, the ALJ applied the proper standard.

At oral argument, petitioners contended that *Parklane Hosiery* set forth the proper standard for a determination of joint employer status. See *Parklane Hosiery Co., Inc.*, 203 NLRB 597, 612, *amended on other grounds*, 207 NLRB 991 (1973). Petitioners maintain that the ALJ should have considered the factors listed in *Parklane Hosiery*— whether there was a functional interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control. *Id.* at 612. However, *Parklane Hosiery* is one of many cases where the concepts of "joint employer" and "single employer" were blurred. See *N.L.R.B. v. Western Temporary Serv.*, 821 F.2d 1258, 1266 (7th Cir.1987) (discussing how these concepts have at times been "blurred" by courts and by the NLRB, and noting the distinctions between the two). Many of the other cases upon which petitioners rely for the joint employer standard have similarly intermixed these concepts. We think *W.W. Grainger* reflects the proper standard.

■ Petitioners further maintain that the ALJ should not have credited Jeffrey Wilt's testimony—they argue that Wilt's demeanor was not convincing and that he testified under pressure from the Union. Accordingly, petitioners contend that Wilt was an unreliable witness. Petitioners allege that Jim Her-

ron's testimony was more credible. However, this court must accept all credibility determinations made by the ALJ, and all reasonable inferences therefrom, absent exceptional circumstances which would justify a different result. *Dorothy Shamrock*, 833 F.2d at 1265. It is the petitioners' burden to demonstrate that exceptional circumstances exist. *Id.* Petitioners have failed to meet this burden. The ALJ rejected petitioners' suggestion that Wilt's testimony was the result of union pressure, noting that he testified freely and without any suggestion of duress. The ALJ was in the best position to evaluate Wilt's and Herron's demeanor, and he found Wilt to be more believable. The transcripts fully support that determination. We accept the ALJ's credibility determinations. The ALJ's and Board's finding of joint employer status is supported by substantial evidence.

### III

■ Next, DiMucci and Wheeling maintain that they admitted the allegations contained in the pre-settlement complaints for the sole purpose of resolving the joint employer issue. They argue that the ALJ's use of these admissions to find that the alleged unfair labor practices did in fact occur was unfair and improper. They contend that there was an agreement among the ALJ and counsel that liability for the alleged unfair labor practices would not be based on the admissions alone. DiMucci and Wheeling allege that, under this agreement, the Board would issue a remedial order for the admitted violations only if 1) the Board found a joint employer relationship; 2) that finding was affirmed by this court; and 3) they *then* had an opportunity to fully litigate the allegations in the pre-settlement complaints. After careful review of the transcripts, we conclude that no such agreement existed and that the ALJ's use of the admissions was proper.

The ALJ and counsel for both sides engaged in lengthy and, at times, confused discussions on the issue of the admissions. Gerard Smetana, counsel for DiMucci, agreed on behalf of DiMucci and Wheeling to amend their answers to admit the allegations contained in the pre-settlement complaints.

However, he attempted to limit the application of the admissions to the resolution of the joint employer issue only. See Tr. at 33. Meanwhile, Ann Crane, counsel for the NLRB, made it perfectly clear that she intended to use the admissions to litigate the issues in case 13–CA–29659 as well as all subsequent proceedings. See Tr. at 77–78. The ALJ encouraged DiMucci and Wheeling to make the admissions so that the issue of whether DiMucci and Wheeling were joint employers with Semi could be addressed first. However, he did not agree to limit the application of the admissions in any way; rather, he agreed with Ms. Crane that the admissions were to be used in litigating the entire case. See Tr. at 77. The ALJ stated that

> [w]hat we are doing is litigating whatever is on our table. And what is on the table, and for the purposes of our agreements here, such as they are, is to find out what the relationship is and was between DiMucci and Wheeling on one hand, and Semi on the other. Because if there is a close relationship, and you show that there were opportunities to reinstate those two people at Semi, then we have an unremedied 8(a)(3) and (1), right? It all rests on that issue.

Tr. at 78. It is therefore apparent that the ALJ intended to use the admissions to reach the joint employer issue first. The admissions would allow the court and parties to streamline the case and simplify it for trial. If the Board demonstrated at trial that DiMucci, Wheeling and Semi were joint employers of Semi's employees, the admitted facts would establish that DiMucci and Wheeling's decision to discharge, lay off and not recall was due to anti-union animus. Perhaps DiMucci and Wheeling have come to regret their litigation strategy. However, they cannot claim to have been surprised by the ALJ's use of the admissions. In fact, Smetana told the court that

> we—are rolling the dice and saying we are confident enough that [sic] in proving there is no joint employer relationship with Semi that we will forego the opportunity of defending the fact that we did not commit any [8(a)(3) ] violations....

Tr. at 27–28. Moreover, the ALJ told Smetana that the admitted facts would not be relitigated. Tr. at 33. The ALJ's use of the admissions was proper.

## IV

Finally, DiMucci and Wheeling allege that the Board exceeded its powers in finding a breach of the settlement agreement and in ordering remedies therefor. DiMucci and Wheeling contend that the alleged breach related to matters entirely outside the Board's substantive and remedial jurisdiction. They argue that, regardless of any joint employer relationship, the Board does not have the power to inquire into an aspect of a settlement agreement which it could not dictate itself or make the subject of a remedy. DiMucci and Wheeling maintain that the Board is not empowered to order a party to engage in business or refrain from engaging in business and that, by finding a violation of the settlement agreement, the Board did just that. However, this argument is without merit. The ALJ and Board did not direct DiMucci and Wheeling to leave the excavation and sewer construction industry. On the contrary, DiMucci and Wheeling represented to the ALJ that it was because they had left the excavation construction industry that they were unable to offer reinstatement to Beery, Stone, Sumrall and Cederstrom. It was because of this representation that reinstatement was not provided for in the settlement agreement. Moreover, the Board's order does not require DiMucci and Wheeling to enter or leave the excavation and sewer construction industry. Rather, the remedial order merely requires the posting of notice, offers of reinstatement, and payment of back pay in wages and benefits to the four union supporters. These are standard Board remedies. We reject DiMucci's and Wheeling's argument that the Board and the ALJ exceeded their powers.

## V

For the foregoing reasons, we grant the NLRB's application for enforcement and deny petitioners' motion to set aside the decision.

