108 F.3d 519
 154 L.R.R.M. (BNA) 2746, 65 USLW 2664,
133 Lab.Cas. P 11,781
 PERDUE FARMS, INCORPORATED, Plaintiff-Appellee,
v.
NATIONAL LABOR RELATIONS BOARD; Willie L. Clark, Jr.,
Regional Director of the Eleventh Region of the
National Labor Relations Board,
Defendants-Appellants.
 No. 96-2128.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 27, 1997.
Decided March 14, 1997.
 
 ARGUED: Abby Propis Simms, Supervisory Attorney, National Labor Relations Board, Washington, DC, for Appellants. Charles Preyer Roberts, III, Haynsworth, Baldwin, Johnson & Greaves, P.A., Greensboro, NC, for Appellee. ON BRIEF: Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, Margery E. Lieber, Assistant General Counsel for Special Litigation, D. Criss Parker, National Labor Relations Board, Washington, DC, for Appellants.
 Before WILKINSON, Chief Judge, and HAMILTON and WILLIAMS, Circuit Judges.
 Chief Judge WILKINSON wrote the opinion, in which Judge HAMILTON and Judge WILLIAMS joined.
 OPINION
 WILKINSON, Chief Judge:
 
 
 1
 Appellee Perdue Farms, Inc. brought suit in federal district court contending that the National Labor Relations Board (NLRB) had violated section 9(c) of the National Labor Relations Act (NLRA), 29 U.S.C. § 159(c). Specifically, the company claimed that the NLRB had not adequately investigated allegations that the United Food and Commercial Workers Union (UFCW) forged signatures on authorization cards submitted in support of a unionization effort at a Perdue plant. The district court agreed with Perdue and enjoined any further NLRB action related to the union effort pending the Board's "full compliance with the mandates of 29 U.S.C. § 159(c)." The NLRB appeals, arguing that the district court lacked subject matter jurisdiction. Because we find that judicial review of Perdue's claim is premature, we vacate the injunction and remand the case for dismissal without prejudice to the company's ability to refile its claim at a more appropriate time.
 
 I.
 
 2
 On June 2, 1995, the UFCW submitted a petition to the Region 11 office of the NLRB seeking to represent workers at Perdue's poultry processing plant in Lewiston, N.C. The union lost the ensuing representation election on June 28, 1995. The UFCW filed objections to the election, one of which was sustained by the Board, and a second election was scheduled for April 4, 1996.
 
 
 3
 On March 27, 1996, Perdue sent a letter to the Region 11 Director accompanied by affidavits from two former UFCW organizers alleging that the union had forged signatures on some 400 of the approximately 800 authorization cards submitted in support of the petition at the Lewiston plant. Perdue asked the Board to investigate. The Regional Director limited his inquiry to comparing the signatures on the authorization cards against employee signatures on documents provided by Perdue. The Director "was unable to conclude that the authorization cards ... had been forged." We further understand that Perdue's fraud allegations have become the subject of ongoing criminal investigation by the Federal Bureau of Investigation and the Racketeering Division of the Department of Labor.
 
 
 4
 In April 1996, the UFCW lost the second election. The union again filed objections, which were scheduled for a hearing on May 21. In addition, the Regional Director issued orders denying motions by Perdue to dismiss the representation petition and to postpone the hearing. On May 20, the Board rejected Perdue's request for review of the Director's orders, but specifically did so "without prejudice to the employer's right to raise these issues in any appropriately filed exceptions to the hearing officer's report that ultimately issues."
 
 
 5
 While Perdue's request for review was pending with the Board, Perdue filed a complaint in district court seeking to enjoin any further proceedings on the union's objections to the second election until the NLRB conducted a more extensive investigation of the fraud allegations. Perdue alleged that the Board had violated section 9(c) of the NLRA, which in relevant part provides that upon the filing of a petition for representation:
 
 
 6
 the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice.
 
 
 7
 29 U.S.C. § 159(c)(1). Perdue argued that the Regional Director's inquiry into the fraud allegations was so inadequate that it did not amount to an "investigation" within the meaning of section 9(c).
 
 
 8
 The district court agreed with Perdue and issued a temporary restraining order on May 29, Perdue Farms, Inc. v. NLRB, 927 F.Supp. 897 (E.D.N.C.1996), and a preliminary injunction on July 23, Perdue Farms, Inc. v. NLRB, 935 F.Supp. 713 (E.D.N.C.1996), after the hearing on the second election had concluded but before the hearing officer had issued a report. While acknowledging that representation proceedings generally are not subject to district court review, the court held that Perdue's section 9(c) claim fell within the narrow exception to this rule recognized by the Supreme Court in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). The Board now appeals, claiming that the district court erred in asserting jurisdiction.
 
 II.
 
 9
 A district court has jurisdiction under Leedom to review NLRB decisions relating to representation proceedings only "where the Board exceeds its delegated powers or ignores a statutory mandate, and the absence of judicial review would sacrifice or obliterate a right created by Congress." J.P. Stevens Employees Educational Committee v. NLRB, 582 F.2d 326, 328 (4th Cir.1978) (citing Leedom ). Perdue contends that this case fits those criteria. The company maintains that the Director's inquiry into the fraud allegations was so limited as to constitute a complete abdication of the NLRB's duty to investigate under section 9(c). Perdue further claims that it is "trapped in an endless cycle of election, objections, and re-election" which effectively prevents it from obtaining judicial review of the fraud allegations.
 
 
 10
 While we think the question of whether the cursory review of the signatures on the authorization cards comports with the mandate of 29 U.S.C. § 159(c)(1) is a serious one, at this point in the Board's proceedings we find that judicial review of either Perdue's section 9(c) claim or the question of Leedom jurisdiction would be premature. The National Labor Relations Act generally permits judicial review of representation proceedings under section 9(c) only after they become the subject of a final NLRB order disposing of an unfair labor practice charge. See Boire v. Greyhound Corp., 376 U.S. 473, 476-77, 84 S.Ct. 894, 896-97, 11 L.Ed.2d 849 (1964). This reflects a conscious policy judgment by Congress that the benefits of more immediate review are outweighed by the likelihood that the delays resulting from such review would frustrate the purposes of the NLRA. See id. at 477-79, 84 S.Ct. at 896-98. The narrow exception to this rule recognized in Leedom applies only under "extraordinary circumstances." See id. at 479-80, 84 S.Ct. at 898. Leedom and Boire thus indicate that judicial review of Board decisions regarding representation proceedings may be available--but only as a last resort.
 
 
 11
 Given the Board's commitment to consider Perdue's fraud allegations, it would hardly be consistent with Leedom and Boire for us to address Perdue's claim before the Board has conducted its review. In light of the extremely serious nature of the allegations, we are confident that the Board will give them careful attention. The Board may well conduct further inquiry into the matter that would remove any doubt as to whether the NLRB has complied with the requirements of section 9(c). We note in addition that since the UFCW lost the second election, any defect in the initial showing of interest will be rendered moot if the Board upholds that result. In that case, the election will have demonstrated conclusively that employees at Perdue were not interested in union representation. The injunction was improvidently granted, as it serves to inhibit the very Board proceedings that may render judicial involvement unnecessary.
 
 III.
 
 12
 For the foregoing reasons, we vacate the injunction entered by the district court and remand the case for dismissal without prejudice to Perdue's ability to refile its section 9(c) claim should further Board proceedings fail to resolve the company's complaint. We express no opinion as to either the merits of appellee's claim or the existence of Leedom jurisdiction to consider it. We assert jurisdiction here only for the narrow purpose of determining that the Leedom and section 9(c) issues were addressed prematurely by the district court. Courts possess jurisdiction to determine whether a jurisdictional issue is itself ripe.
 
 
 13
 VACATED AND REMANDED WITH DIRECTIONS TO DISMISS.