Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 27, 2003       Decided June 10, 2003

No. 01-1486

AOTOP, LLC, D/B/A EXCEL REHABILITATION AND
HEALTH CENTER,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

On Petition for Review and Cross–Application
for Enforcement of an Order of the
National Labor Relations Board

———

*Clifford H. Nelson, Jr.* argued the cause and filed the briefs for petitioner.

*Jeffrey L. Horowitz*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Arthur F. Rosenfeld*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*,

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Deputy Associate General Counsel, and *Robert J. Englehart*, Supervisory Attorney.

Before: GINSBURG, *Chief Judge*, and SENTELLE and RANDOLPH, *Circuit Judges*.

Opinion for the court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: This case concerns the validity of an election in which employees of AOTOP, LLC, chose the Service Employees International Union, AFL–CIO, to be their exclusive bargaining representative. Over the Company's objections, the National Labor Relations Board certified the election results and, after the Company refused to bargain with the Union, concluded the Company violated §§ 8(a)(1) & (a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) & (a)(5). In its petition for review, the Company argues that the Board should have ordered a rerun election or, at a minimum, held a hearing on the Company's allegations that Union misconduct and the lack of a foreign language interpreter rendered the election unfair. We uphold the Board's conclusion that the Company's allegations and evidence were insufficient to merit a hearing. Accordingly, we deny the petition for review and grant the Board's cross-application for enforcement of its order.

## I. Background

AOTOP owns and operates the Excel Rehabilitation and Nursing Center in Tampa, Florida. In December 2000 the Union filed a petition seeking Board certification as the representative of Excel's service and maintenance employees. The Regional Director of the Board, pursuant to an agreement between the Company and the Union, scheduled an election for late January 2001.

In pre-election correspondence the Company's attorney requested accommodation for employees who were not native English speakers. In a letter dated January 15, 2001, the attorney wrote:

> At the time that we entered into the stipulation for
> an election . . . I indicated that it was sufficient for

> the ballots and election notices to be only in English.
> . . . Unfortunately, as a result of more intensive communications by the Employer's on-site management, I have been advised that it would be beneficial and in some cases necessary, for the ballots and election notices to be printed in Spanish and French (Creole) as well.

In a second letter four days later the attorney confirmed that, of the 73 employees eligible to vote in the upcoming election, 16 spoke either Spanish or French Creole. The letter concluded: "I will assume that the necessary measures to address these changed circumstances will be implemented, unless I hear from you to the contrary." In response to these letters, the Regional Director provided election notices and ballots translated into Spanish and French Creole.

According to the Company, in the period leading up to the election an employee named Cheryl Jennings tried to intimidate her coworkers into voting for the Union. Jennings allegedly asked her fellow employees how they were going to vote, told them they "had to vote for the Union," and followed one housekeeping employee "as she attempted to perform her duties." The Company claims that at least five employees were disturbed by this conduct—two so much that they resigned prior to the election.

When the Union won the election, the Company, in objections filed with the Regional Director, argued that the results were invalid because of Jennings' conduct. The Company produced the names of the five employees who would testify that they were intimidated, and identified Jennings as "one of the most active employees in support of the Union's election campaign efforts . . . [and] an observer for the Union on the day of the election." The Company stated that it would subpoena the Union's financial records in order to show "wage payments or reimbursements to Cheryl Jennings . . . [and] other Union campaign records [that] would further establish that Ms. Jennings was an active organizer and agent of the [Union]." In addition, the Company argued that its letters to the Regional Director had put the Board on notice

of the need for an interpreter, and that the election results should be set aside because the Board failed to provide one.

The Regional Director recommended that the Board over-rule the Company's objections and certify the election results because (1) the Company's evidence, even if true, was insufficient to establish a prima facie claim of election misconduct, and therefore did not warrant a hearing, and (2) it was the Company's duty to inform the Board of the need for an interpreter, which it failed to do. The Board adopted the findings and recommendations of the Regional Director. In order to get judicial review of that decision, the Company refused to bargain with the Union and defended the ensuing unfair labor practice charge solely upon the ground that the election was invalid. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 476–77 (1964) (certification decisions not reviewable as such, but can be examined in proceedings brought against employer for refusal to bargain). The Board summarily rejected the Company's defense, *AOTOP, LLC*, 336 N.L.R.B. No. 10, 2001 NLRB LEXIS 784 (Sept. 28, 2001), and the Company petitioned for review.

## II. Analysis

The Company argues that Union misconduct and the Board's failure to provide an interpreter each independently tainted the election. We consider those points whilst keeping in mind the Board's broad discretion "to assess the propriety and results of representation elections." *North of Market Senior Servs., Inc. v. NLRB*, 204 F.3d 1163, 1167 (D.C. Cir. 2000).

### A. Union misconduct

The Company makes no serious claim the evidence of Union misconduct in the present record conclusively establishes that the election should be set aside. Rather, the Company maintains it was an abuse of discretion for the Board to reject its claim without a hearing.

A party to a Board-supervised election is not entitled to a hearing on its objections unless the evidence raises a "substantial and material issue[ ] of fact sufficient to support a

prima facie showing of objectionable conduct." *Swing Staging, Inc. v. NLRB*, 994 F.2d 859, 862 (D.C. Cir. 1993) (citing 29 C.F.R. § 102.69(d)). Whether the Company's evidence was sufficient depends upon the Board's "substantive criteria" for a claim of election misconduct. *Id.* Those criteria, in turn, depend upon who is charged with interfering with the election.

> Where election misconduct is attributable to one of the parties, the Board will overturn the election if the misconduct created such an environment of tension and coercion as to have had a probable effect upon the employees' actions at the polls and to have materially affected the results of the election. Where misconduct is attributable to third parties, however, the Board will overturn an election only if the misconduct is so aggravated as to create a general atmosphere of fear and reprisal rendering a free election impossible.

*Overnite Transp. Co. v. NLRB*, 140 F.3d 259, 264–65 (D.C. Cir. 1998) (citations and quotations omitted).

The Board applies common law principles of agency, including the doctrine of apparent authority, in order to determine whether a union (or employer) is responsible for the misconduct of its supporters. *Id.* at 265. In view of the factual nature of that determination, an evidentiary hearing ordinarily will be required in order to resolve a dispute about the relationship between a person alleged to have interfered with a Board-supervised election and one of the parties to that election. We review the Board's finding for reasonableness and to ensure that it is supported by substantial evidence. *Id.*

We agree with the Company that the Regional Director erred by deciding, on the basis of an undeveloped record, that Jennings was not an agent of the Union. The case upon which the Regional Director relied, *Advance Prods. Corp.*, 304 N.L.R.B. 436, 1991 NLRB LEXIS 1043 (Aug. 27, 1991), is inapposite; although the Board there found apparent authority lacking, it did so with reference to details that had been developed at a hearing. *Id.* at 436. Meanwhile, the Regional

Director's statement that the Company presented "no evidence" to support its assertion that the Union's records would demonstrate that the Union hired Jennings to conduct pro-Union activities is erroneous. The Company submitted an affidavit identifying Jennings as an active Union supporter and "an observer for the Union on the day of the election." The Company cannot be expected, in order to justify a hearing on the question of agency, to produce detailed information about the Union's records—the very information to which it seeks access through the hearing and associated discovery process. *See Colquest Energy, Inc. v. NLRB*, 965 F.2d 116, 122 (6th Cir. 1992) (remanding for hearing upon agency question after noting employer's contention that "only [the Union] has access to vital information concerning [the purported agents] within its files").

Our conclusion that the Regional Director improperly concluded Jennings was not acting as an agent of the Union does not necessarily entitle the Company to relief, however. The Regional Director held, in the alternative, that the Company's evidence was insufficient to merit a hearing under the standard for evaluating misconduct by the agent of a union (or employer) during the run-up to an election; more specifically, the Company did not raise a substantial factual question whether there had been "misconduct [that] created such an environment of tension and coercion as to have had a probable effect upon the employees' actions at the polls and to have materially affected the results of the election." *Overnite Transp. Co.*, 140 F.3d at 264 (citations and quotations omitted). We agree with the Regional Director's determination.

The Company alleged only that Jennings told fellow employees they "had to" vote for the Union, asked employees how they were going to vote, and followed an employee while she worked. Whether that conduct, assuming it occurred, is sufficiently serious to have had "a probable effect upon the employees' actions at the polls," *id.*, is an objective question for the Board, which asks whether the alleged misconduct is of a type that would cause interference with the free choice of a reasonable employee. *See Kmart Corp.*, 322 N.L.R.B. 1014, 1015, 1996 NLRB LEXIS 91 (Feb. 6, 1997) ("Subjective

reactions of employees are irrelevant to the question of whether there was, in fact, objectionable conduct"). It is therefore of little moment that the Company's witnesses were denied the opportunity to testify that they were intimidated.

We find no abuse of discretion in the Board's rejection of the Company's claim. Coercive campaigning can be threatening in any number of ways, but most commonly preys upon the employee's fear for her job security or personal safety. As the Regional Director noted, the Company produced nothing to suggest Jennings had any authority over any of her coworkers such that they might reasonably fear job-related reprisal if they voted against the Union. Nor did the Company suggest Jennings expressly threatened such reprisal, much less any physical harm. Yet the Company has cited no case in which the Board has required a hearing to explore such seemingly innocuous conduct as telling an employee she "had to" vote in a particular way or following an employee around the workplace. Indeed, we have upheld the Board in holding unobjectionable more serious conduct than that. *Cf. Amalgamated Clothing,* 736 F.2d at 1564–70 (under "fear and coercion" standard, boasts by pro-union employees that "people could be hurt" and "cars [would be] torn up" and panoply of anonymous pre-election threats and incidents of vandalism insufficient, even taken together, to warrant re-run election). We therefore uphold the Board's conclusion that the Company failed to present evidence meriting a hearing on its claim of election misconduct.

B.   Lack of an interpreter

The Company's claim that the election results should be set aside because the Board failed to provide Spanish and French Creole interpreters gives us little pause. Although the Board has recognized the importance of foreign language assistance to ensuring a fair election and has ruled that under certain circumstances it must provide translated notices or ballots, *e.g., Fibre Leather Mfg. Corp.,* 167 N.L.R.B. 393, 1967 NLRB LEXIS 50 (Sept. 11, 1967) ("Regional Director did not conduct the election with due regard to the needs of Portuguese-speaking employees who could not read English"), the

Board's policy is to depend upon a party to request a language accommodation. National Labor Relations Board, Casehandling Manual, Part 2, Representation Proceedings § 11315.1 (1999) ("Parties should advise the Regional Director of the need for foreign language translations and/or interpreters").

The Company does not challenge the validity of the Board's policy but asserts that its letters to the Regional Director constituted a request for interpreters. As noted above, however, the Company's attorney wrote only that "it would be beneficial and in some cases necessary for the ballots and the election notices to be printed in Spanish and French (Creole) as well [as in English]." The Regional Director duly complied with that request. The Company claims the Board should also have divined the need for an interpreter. The Company has cited no authority for this proposition, however, nor any reason to add mind-reading to the Board's already difficult task list in supervising Union elections. Because the Company made no specific request for an interpreter, it will not be heard now to claim the Board's failure to provide one rendered the election unfair.

### III. Conclusion

For the foregoing reasons, we deny the Company's petition for review and grant the Board's cross-application for enforcement of its order.

*So ordered.*