# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 20-1280**

**September Term, 2020**

FILED ON: MAY 21, 2021

800 RIVER ROAD OPERATING COMPANY, LLC, D/B/A CARE ONE AT NEW MILFORD,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

1199SEIU UNITED HEALTHCARE WORKERS EAST,
INTERVENOR

Consolidated with 20-1321

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

Before: SRINIVASAN, *Chief Judge*, RAO, *Circuit Judge*, and SILBERMAN, *Senior Circuit Judge*

## J U D G M E N T

This cause was considered on a petition for review and cross-application for enforcement of an order of the National Labor Relations Board. The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the following reasons, it is

**ORDERED AND ADJUDGED** that the petition for review in No. 20-1280 is hereby **DENIED**, and the Board's cross-application for enforcement in No. 20-1321 is **GRANTED**.

Petitioner is a New Jersey LLC providing long-term and post-hospital rehabilitation care. In 2012, Petitioner's nonprofessional employees voted in favor of unionization, and the Board certified the election over the company's objections. Petitioner tested that certification by refusing to bargain. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 476–77 (1964). But the NLRB

rejected the company's arguments and found it in violation of Section 8(a)(5) of the National Labor Relations Act.   We granted enforcement of the Board's order.   *See 800 River Rd. Operating Co., LLC v. NLRB*, 846 F.3d 378 (D.C. Cir. 2017).

Following that dispute, a new complaint was brought against Petitioner.   According to the Board's General Counsel, the company unilaterally reduced the hours of 20 bargaining unit employees in violation of Sections 8(a)(1) and (5) of the National Labor Relations Act.   It is undisputed that an employer violates the NLRA if it makes a unilateral change to the status quo without first providing notice and the opportunity to bargain.   *See NLRB v. Katz*, 369 U.S. 736, 742–43 (1962).   According to the General Counsel, the employees in question generally accrued 40 hours per week before the unilateral reduction and 37.5 hours per week after.   An ALJ agreed, finding that this was a material change in hours which required notice and an opportunity to bargain.   *See* J.A. 208.   The Board adopted the ALJ's finding and held that the unilateral reduction in hours was unlawful.   *See 800 River Rd. Operating Co., LLC*, 369 NLRB No. 109, at *1 n.1 (June 23, 2020).[1]   Petitioner seeks review of the Board's decision; the Board filed a cross-application for enforcement.

Petitioner's primary contention is that the Board erred when it adopted the ALJ's finding that the status quo was a 40-hour workweek.   The status quo, according to Petitioner, was "37.5 hours or more," not 40.   Pet'r's Br. at 24, 26–27.   Therefore, any supposed reduction to 37.5 hours per week was not a deviation from the norm.   In Petitioner's view, the agency reached the 40-hour determination by improperly discounting the testimony of Petitioner's Vice President for Human Resources, Maureen Montegari, in favor of employee timesheets.   Montegari testified that the full-time employees regularly worked 37.5 hours or more per week.   Her testimony was supported by Petitioner's "Wage & Benefit Summary"—a document provided to all employees— which states that employees must work at least 37.5 hours per week to receive full-time benefits.

This argument conflates the minimum for what is required to receive benefits with the normal practice for covered employees.   *E.g.*, Pet'r's Br. at 25 ("[A] Full-Time employee was only *required* to regularly accumulate . . . 37.5 hours or more during a week.") (emphasis altered).[2] The latter is the proper focus of the Board's inquiry.   *See Raytheon Network Centric Sys.*, 365 NLRB No. 161, at *6–8 (Dec. 15, 2017).   Recognizing this flaw in Petitioner's argument, the agency properly credited the probative value of time sheets reflecting actual hours instead of the required minimums.

Even if Petitioner's evidentiary theory could be supported by the record, it was well within the Board's discretion to make a different finding.   Our evidentiary review is limited to whether the Board's findings are supported by substantial evidence.   29 U.S.C. § 160(e), (f); *Kiewit Power Constructors Co. v. NLRB*, 652 F.3d 22, 25 (D.C. Cir. 2011).   To prevail on substantial evidence

---

[1] The Board agreed with Petitioner on a separate issue, overruling its precedent to hold that Sections 8(a)(5) and (1) of the Act do not impose a pre-discipline bargaining obligation.   *Id*. at *11 (overruling *Total Security Mgmt. Ill. 1, LLC*, 364 NLRB No. 106 (Aug. 26, 2016)).   That issue is not before us.

[2] Petitioner similarly claims that since the Wage and Benefit Summary "contained no guarantee" of 40 hours, then 40 hours could not have been the status quo.   Pet'r's Br. at 24–25.   That is a non sequitur.

review, it is not sufficient for Petitioner to show that its theory is one interpretation of the record. *Contra* Pet'r's Br. at 24 (arguing that its theory was "uncontroverted"). Rather, Petitioner bears the burden of demonstrating that the evidence is "so compelling that no reasonable factfinder could fail to find to the contrary." *Kiewit Power*, 652 F.3d at 25 (quotations and citations omitted).

The Board stood on solid ground when it reached a different conclusion. Petitioner asserts that the agency "created [the] 40-hour workweek 'status quo' almost entirely out of whole cloth based on guesswork."[3] Pet'r's Br. at 30; *see also* Pet'r's Br. at 25 ("The record is devoid of any witness testimony that the 'status quo'. . . was anything different than what was reflected in the Wage & Benefit Summary."). Not so. *See* Resp't Br. at 10–13. We have reviewed the record and conclude that it supports the 40-hour status quo. It is true, as Petitioner points out, that the timesheets fluctuate. But this variance around the mean was acknowledged by the agency, and it does not undermine the status quo finding.

Petitioner's remaining assertions are also meritless. Petitioner complains that the agency "cited no case law as to how to legally define the 'status quo.'" Pet'r's Br. at 31. To be sure, an agency may not ignore relevant precedents that cut against its decision. *See Frontier Pipeline Co. v. FERC*, 452 F.3d 774, 781 (D.C. Cir. 2006). But an agency—like a court—need not support well-established propositions with case law. An agency must satisfy the APA's requirement of reasoned decision making, not the citation demands of a law review editor.

Nor is there any merit to the assertion that the Board insufficiently reviewed the ALJ's decision. *See* Pet'r's Br. at 39 ("[T]he Board merely rubber stamped ALJ Green's Decision in a footnote."). Where the Board stands by an ALJ's analysis, it is entirely proper for it to adopt that analysis as its own (or affirm it summarily). *See, e.g.*, *Ne. Broad., Inc. v. FCC*, 400 F.2d 749, 759 (D.C. Cir. 1968). This practice is well established.

Last, Petitioner asserts that the NLRB's General Counsel changed the legal theory it advanced before the agency. But Petitioner does not explain what principle this violates, or how any such change created prejudice. Moreover, since this argument was not presented to the Board, it is not properly before us. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court.").

\* \* \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* Fed. R. App. P. 41 (b); D.C. Cir. R. 41.

**Per Curiam**

---

[3] Petitioner argues that payroll records were formed after the collective bargaining agreement. Therefore, it was improper to rely on them in determining the "status quo." *See* Pet'r's Br. at 30, 33. This contention is meritless. The Board has established that the change in the current status quo is what matters, not a change from an earlier collective bargaining agreement. *See Raytheon*, 365 NLRB No. 161, at \*6–8.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk