**TRANSPORTATION MAINTENANCE SERVICES, L.L.C., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 00–1427.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 15, 2001.

Decided Jan. 4, 2002.

---

Larry P. Kaplan argued the cause for petitioner. With him on the briefs were Mark W. Weisman and Michelle M. Gaffney.

Richard A. Cohen, Senior Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Arthur F. Rosenfeld, General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Fred L. Cornnell, Supervisory Attorney.

Before: GINSBURG, Chief Judge, HENDERSON, Circuit Judge, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Chief Judge GINSBURG.

GINSBURG, Chief Judge:

An employee of Transportation Maintenance Services petitioned the National Labor Relations Board to hold an election to decertify his union. The Board conducted an election but then impounded the ballots pending its review of the Union's claim that the election was time-barred. Before the Board had ruled upon that objection, the employee moved to withdraw his petition, claiming that he and his co-workers no longer wanted to decertify the Union. The Board granted that request and thus set the election to naught. Because the Board's decision is inconsistent with the preference for secret ballot elections expressed in the National Labor Relations Act, we grant TMS's petition for review and remand this matter for further proceedings before the Board.

## I. Background

Transportation Maintenance Services fuels and services trucks in Bridgeton, Missouri. The employees at its nearby sister company, C & M Services, Inc., are represented by two unions: the Machinists represent the skilled mechanics while Local 618, an affiliate of the Teamsters, represents the unskilled employees. In May, 1996 Local 618 charged TMS with unfair labor practices for, among other things, transferring unskilled workers from C & M to TMS in breach of the collective bargaining agreement between C & M and Local 618. The parties settled the matter in late 1996 with TMS agreeing to recognize Local 618 as the exclusive bargaining representative of its unskilled employees.

TMS and Local 618 bargained from January to early May, 1997 without reaching an agreement. Meanwhile, in late April one of the six TMS employees represented by Local 618, Charles Maher, petitioned for a decertification election. The Regional Director of the Board granted Maher's

petition over the objection of the Union that an election was barred because the Union had not had a reasonable time to bargain. *See Mar–Jac Poultry Co., Inc.,* 136 N.L.R.B. 785, 786, 1962 WL 16465 (1962). The Regional Director reasoned that, absent "affirmative evidence ... establishing that the recognition was extended in good faith, on the basis of a previously demonstrated majority, and at a time when only that union was actively engaged in organizing the unit employees," a settlement agreement by which an employer recognizes a union does not erect a so-called 'recognition bar' to a decertification election and that, in any event, a reasonable period of time had elapsed between recognition and the decertification petition. *Regional Director's Decision,* 14–RD–1568, at 4 n.3 (May 29, 1997).

The decertification election was scheduled for June 26, 1997. On June 25 the Board granted Local 618's request to review the Regional Director's decision authorizing the election. The election was held as scheduled, but the ballots were impounded pending the Board's review. More than a year had passed without the Board's having decided whether the election should have been held when, on July 15, 1998 Maher asked to withdraw his petition for election. The Board granted Maher's request with alacrity and almost another year later denied, by a vote of 3–2, TMS's motion to reconsider.

Local 618 then requested that TMS resume contract negotiations. When TMS refused based upon its disagreement with the Board's ruling, Local 618 charged TMS with an unfair labor practice. The Board ruled against TMS, *Transp. Maint. Servs.,* 331 N.L.R.B. No. 140, 2000 WL 1206228 (2000) (*Decision*), and the Company now petitions this court for review.

## II.  Analysis

The Board granted Maher's request to withdraw his election petition on the ground that, as expressed in the Board's Casehandling Manual, its "general policy ... favor[s] the effectuation of a petitioner's genuine voluntary desire to [terminate] the proceeding." *Transp. Maint. Servs.,* 328 N.L.R.B. No. 93, at 1, 1999 WL 411647 (1999) (quoting NLRB Casehandling Manual, Representation Proceedings (Part II), § 11110). TMS contends that the Board erred in adhering to its policy in this case because here the employee's request came after the election had been held.

The National Labor Relations Act provides that "[i]f the Board finds ... that ... a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof." 29 U.S.C. § 159(c)(1). As a matter of practice, however, the Board does not always certify the results of an election; if there is a challenge to the legitimacy of the election, then the Board impounds the ballots pending its resolution of the dispute. If the Board ultimately determines that the election is barred or otherwise invalid, then it simply discards the ballots.

In this case, however, the Board failed to certify the results even though it had not determined that the election was barred, as the Union claimed. That step is in some tension with the Act's directive that the Board "shall certify the results" of a (valid) election, but in at least one circumstance such a failure to certify seems only reasonable even though the election has not been held invalid: When a union states that if elected it will not represent the employees, the results of the election are made moot and the Board does not tally the ballots. *See Transp. Maint. Servs.,* 328 N.L.R.B. No. 93, at 2 n. 2

(Members Hurtgen and Brame, dissenting).

■ Cases presenting a reason good enough for the Board to disregard an election are rare. The Act establishes an electoral apparatus to be administered by the Board because formal elections with secret ballots best express employees' free choice. *See NLRB v. Gissel Packing Co.,* 395 U.S. 575, 602, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969) ("[S]ecret elections are generally the most satisfactory—indeed the preferred—method of ascertaining whether a union has majority support"); *Conair Corp. v. NLRB,* 721 F.2d 1355, 1383 (D.C.Cir.1983) ("Our national labor relations policy is designed to effectuat[e] ascertainable employee free choice and expressed majority sentiment"). When a valid election has been held, the results are to be counted and given effect except when there is a particularly compelling reason for not doing so, as in the case of the unwilling union.

The Board argues that denying Maher's withdrawal request could, by saddling the employees with the results of the votes they cast a year earlier, deprive them of representation they later came to value: Maher wrote in his request that the "employees were getting upset with the Employer and wanted to withdraw the [decertification] petition." *Transp. Maint. Servs.,* 328 N.L.R.B. No. 93, at 1. The Board saw no reason to doubt Maher's assertion because the Company offered no evidence to rebut it. *Id.*

■ The Board's position ignores the presumption in favor of an election to resolve a question of representation. Whether an election may be disregarded even upon the basis of solid evidence that most employees' preferences have changed since they voted is a nice question but one we need not address today, *cf. Garvey Marine, Inc. v. NLRB,* 245 F.3d 819, 828–29 (D.C.Cir.2001) (upholding Board's decision to enforce bargaining order despite significant turnover among employees after order was issued), for the evidence before the Board in this case could hardly have been more flimsy. The only indication of the employees' post-election preference was Maher's hearsay assertion that his co-workers agreed with him. Although hearsay evidence can be sufficient to raise a question of representation, *see Allentown Mack Sales & Serv., Inc. v. NLRB,* 522 U.S. 359, 368–71, 118 S.Ct. 818, 823–25, 139 L.Ed.2d 797 (1998) (hearsay evidence created good-faith doubt about union's majority status), Maher's unsubstantiated, self-serving statement cannot possibly be thought to overcome the presumption—if the presumption is to have any force at all—in favor of adhering to the results of the electoral process. Otherwise it would be open to a zealous union adherent—or indeed, a zealous opponent of the union in a case involving an initial election the employer's exceptions to which are pending before the Board—to displace the electoral process with a series of one-on-one chats with his co-workers.

■ Relatedly, the Board erred by faulting TMS for failing to rebut Maher's claim. First, the burden of showing the unusual circumstance that justifies disregarding the electoral process lay with the General Counsel, not with the employer. Second, the employer would have risked an unfair labor practice charge if, in order to rebut Maher's assertion, it had followed Maher's example by polling its employees about their preferences regarding union representation. *See Allegheny Ludlum Corp. v. NLRB,* 104 F.3d 1354, 1359 (D.C.Cir.1997) ("An employer 'poll' may in itself interfere with employees' exercise of their § 7 rights because any attempt by an employer to ascertain employee views and sympathies regarding unionism generally

tends to cause fear of reprisal in the mind of the employee if he replies in favor of unionism and, therefore, tends to impinge on his Section 7 rights").

In sum, the Board did not base its acceptance of Maher's request upon substantial evidence. It disregarded the results of a potentially valid election merely because one employee said that he and his fellows wanted the results thrown out. We therefore vacate the *Decision* and remand this matter for the Board to decide at long last whether, as the Union claims, there was a recognition bar to the decertification election of June 26, 1997.

### III. Conclusion

For the foregoing reasons, the petition for review is

*Granted.*