In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 13-1954, 13-2079

HEARTLAND HUMAN SERVICES,

*Petitioner / Cross-Respondent*,

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent / Cross-Petitioner*,

and

AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL
EMPLOYEES, COUNCIL 31, AFL-CIO,

*Intervening Respondent.*

_____

Application for Enforcement, and Cross-Petition for Review, of an
Order of the National Labor Relations Board.
No. 14-CA-087886.

_____

ARGUED JANUARY 23, 2014 — DECIDED MARCH 14, 2014

_____

Before POSNER and RIPPLE, *Circuit Judges*, and GILBERT, *District Judge*.[*]

POSNER, *Circuit Judge*. The Labor Board asks us to enforce its order finding that Heartland Human Services, a company that provides mental-health and substance-abuse services, committed an unfair labor practice by refusing, in the wake of a decertification election, to continue recognizing a union that represented a bargaining unit of Heartland employees. See 29 U.S.C. §§ 158(a)(1), (5). (Until enforced by judicial order, an unfair labor practice order has no legal force, 29 U.S.C. § 160(e); *NLRB v. P\*I\*E Nationwide, Inc.*, 894 F.2d 887, 890 (7th Cir. 1990); *National Ass'n of Manufacturers v. NLRB*, 717 F.3d 947, 951 (D.C. Cir. 2013), which is why the Board has petitioned us.) We must decide both whether we have jurisdiction to adjudicate the company's challenge to the Board's order setting aside the results of the election and whether Heartland indeed committed an unfair labor practice by refusing to recognize the union after the election.

In August 2011, just days after the latest collective bargaining agreement between the company and the union had expired, one of the employees in the bargaining unit asked the Labor Board to conduct a decertification election on the ground that many of the unit's members no longer wanted to be represented by the union. Neither the company nor the union opposed the request. The election was conducted in June of the following year. Thirty-eight votes were cast: 19 for the union and 18 against, with the remaining ballot not opened because the union contended that the employee who had cast it was not a member of the bargaining unit. The Board rejected that challenge, the ballot was opened, and the

---

[*] Of the Southern District of Illinois, sitting by designation.

vote was against the union, which meant the election had resulted in a tie.

Had that been the only challenge to the election, the union, lacking majority support, would have been decertified and so the company would no longer have been required to recognize and bargain with it. 29 U.S.C. § 159(a); *Ron Tirapelli Ford, Inc. v. NLRB*, 987 F.2d 433, 436 (7th Cir. 1993); *Kinney Drugs, Inc. v. NLRB*, 74 F.3d 1419, 1423 (2d Cir. 1996). But the union challenged the result of the election on another ground as well—that the company had used "objectionable conduct" to turn the employees against the union, conduct that included among other things the sending of a letter of unknown but possibly management origin to a member of the bargaining unit threatening her with jail if she voted for the union.

"Objectionable conduct," though it is a ground for setting aside the results of a representation election if the conduct is found to have interfered with the voters' "free choice," *NLRB v. O'Daniel Trucking Co.*, 23 F.3d 1144, 1149 (7th Cir. 1994); *Comcast Cablevision-Taylor v. NLRB*, 232 F.3d 490, 494 (6th Cir. 2000), need not be *so* "objectionable" as to constitute an unfair labor practice. *Siemens Mfg. Co.*, 322 N.L.R.B. 994, 994 n. 2 (1997). The distinction is important because the Labor Board will not conduct a new election if an unfair labor practice charge is pending. National Labor Relations Board, *Casehandling Manual: Representation Proceedings* § 11730 (Aug. 2007); *Albertson's, Inc. v. NLRB*, 161 F.3d 1231, 1239 (10th Cir. 1998); *Surprenant Mfg. Co. v. Alpert*, 318 F.2d 396, 397–98 (1st Cir. 1963). (There are exceptions to this rule, see *Casehandling Manual*, *supra*, § 11731, but none contended to be applicable to this case.) The rule is grounded in concern that the con-

duct charged as an unfair labor practice may, until its legality is determined, poison the new election. *Bishop v. NLRB*, 502 F.2d 1024, 1028–29 (5th Cir. 1974).

The Board agreed with three of the union's charges of objectionable conduct and in September 2012 ordered a new election. Before then, however, in July, shortly after the decertification election, the company—claiming that the result of the election proved that the union had lost the support of a majority of the unit—had announced that it would no longer cooperate with the union in any of the ways that are required of a company that has employees who have a certified collective bargaining representative. See 29 U.S.C. §§ 158, 159. It had, in short, rescinded its recognition of the union. This was premature, since the challenged ballot had not yet been opened. Until a union is decertified following an election, the company's obligations to it are the same as they had been before the election and if it spurns those obligations it is guilty of an unfair labor practice. *Virginia Concrete Corp.*, 338 N.L.R.B. 1182, 1184 n. 5 (2003); *W.A. Krueger Co.*, 325 N.L.R.B. 1225, 1226 (1990); *Presbyterian Hospital*, 241 N.L.R.B. 996, 998 (1979).

The union was thus on solid ground in responding to the company's withdrawal of recognition by filing an unfair labor practice complaint, 29 U.S.C. §§ 158(a)(1), (5), which it did in August 2012. The Board upheld the complaint and ordered the company to recognize the union and bargain with it on request. That's the order the Board is asking us to enforce. The company argues that it committed no unfair labor practice because it had solid grounds for believing that the union no longer represented a majority of the unit's employees.

The Board issued the unfair labor practice order in March 2013, some nine months after the election. The new election ordered by the Board in September 2012 has not yet been held—20 months after the first election—because the unfair labor practice proceeding hasn't been finally resolved, owing to the pendency of this judicial review proceeding.

Such delay undermines the rationale for an election do-over, which is intended to be remedial—to be a cure for the irregularities that prompted the decision to set aside the result of the original election. *Rosewood Mfg. Co.*, 263 N.L.R.B. 420 (1982); see also *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 610–11 (1969); *NLRB v. Jamaica Towing, Inc.*, 632 F.2d 208, 212 (2d Cir. 1980). In the space of 20 months the unit membership may have changed. The company or the union may have tried with some success to alter the size or composition of the unit so that its opponents would be less likely to prevail. New employees would be unfamiliar with the union; some old ones may have forgotten it; and the company could have used the period to accustom the employees to the union's absence.

The logical solution to the problems created by a long delay (owing to judicial review) in the holding of the reelection would seem to be for the company, rather than precipitating an unfair labor practice charge by refusing to bargain with the union, to be subjected to a 30- or 60-day deadline for seeking judicial review of the Board's order sustaining the union's objections to the outcome of the first election. That route is blocked, however, by decisions by the Supreme Court, notably *American Federation of Labor v. NLRB*, 308 U.S. 401, 406–11 (1940), and *Boire v. Greyhound Corp.*, 376 U.S. 473, 476–79 (1964), holding that an order by the Labor Board cer-

tifying or decertifying a union is subject to judicial review only in conjunction with an unfair labor practice order by the Board. For only a "final order" of the Board is reviewable, 29 U.S.C. § 160(f), and the cases we've just cited hold that certification orders are not "final orders." See also *Chicago Truck Drivers, Helpers & Warehouse Workers Union v. NLRB*, 599 F.2d 816, 817–18 and n. 2 (7th Cir. 1979); *Adtranz ABB Daimler-Benz Transportation, N.A., Inc. v. NLRB*, 253 F.3d 19, 24–25 (D.C. Cir. 2001); Michael C. Harper, "The Case for Limiting Judicial Review of Labor Board Certification Decisions," 55 *Geo. Wash. L. Rev.* 262, 271–72, 275 (1987). They are orders, and they are final; the reason that has been given for withholding immediate judicial review is concern that immediate review would delay the holding of the new, curative election. *Boire v. Greyhound Corp., supra*, 376 U.S. at 477–79; *Mosey Mfg. Co. v. NLRB*, 701 F.2d 610, 614 (7th Cir. 1983) (en banc); *Leedom v. Kyne*, 358 U.S. 184, 191–94 (1958) (dissenting opinion). The median interval between the filing of a petition for an election, and the election, is only 38 days, whereas the interval between the filing of a petition for judicial review of a decision by the Labor Board and the disposition of the case by the court of appeals is bound to be a number of months.

But although judicial review of a Board order confirming or setting aside an election is thus postponed, it is not eliminated. Errors committed in the electoral process must be corrigible on judicial review for certification and decertification to be acceptable as reliable determinations. Cf. 5 U.S.C. §§ 702, 704; *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 489–90 (1951); M. Elizabeth Magill, "Agency Choice of Policymaking Form," 71 *U. Chi. L. Rev.* 1383, 1412–13 (2004). So this was how judicial review would be obtained: The com-

pany would continue to deal with the union until the results of the curative election were known. If the union won that election and was certified by the Board as the collective bargaining representative of the unit, and the company refused to accept the result and the Board deemed the refusal an unfair labor practice and sought judicial enforcement of its unfair labor practice order, the company would obtain judicial review of the Board's determination that it had committed an unfair labor practice. And one ground it could raise for upsetting the determination was that the first election had been fair and therefore the order refusing to decertify the union had been error and so the company should not have been required to recognize the union and the court should not enforce the Board's order that it do so. See, e.g., *NLRB v. E.A. Sween Co.*, 640 F.3d 781, 782, 784 (7th Cir. 2011); *NLRB v. Lake Holiday Associates, Inc.*, 930 F.2d 1231, 1233 (7th Cir. 1991); *NLRB v. Carl Weissman & Sons, Inc.*, 849 F.2d 449, 450 (9th Cir. 1988) (per curiam); *Timsco Inc. v. NLRB*, 819 F.2d 1173, 1175–76 (D.C. Cir. 1987). It isn't an unfair labor practice for a company to refuse to recognize a union that should have been decertified on the basis of the result of the first election.

Heartland jumped the gun by refusing to recognize the union before the new election ordered by the Board was conducted and its results certified. The company argues that if it can prove that the June 2012 election was fair and square and the union should therefore be decertified, it and the union will be spared the bother of a second election. But suppose the company fails to prove that and so a new election has to be conducted; probably by the time it's conducted, two years will have elapsed since the first election. Had the company not withdrawn recognition of the union after the

decertification election, the union would have had no grounds for filing an unfair labor practice complaint and the new election would have been conducted promptly. And had the company lost and wanted the initial election reinstated, it could by withdrawing recognition of the union have precipitated an unfair labor practice complaint and obtained, if the Board determined that the refusal of recognition was an unfair labor practice, judicial review of that determination.

But now suppose the second election had been held and the company had won it fair and square. Then judicial proceedings arising out of the first election would be pretermitted. So while the Board's procedure for dealing with election challenges is unquestionably cumbersome because of the Board's refusal to conduct a new election while an unfair labor practice complaint is pending, the procedure suggested by the company could prove even more cumbersome. For until the new election is held, there is no jurisdiction to review the Board's refusal to decertify the union, and so the reviewing court can't adjudicate the dispute between the company and the Board (and union) over whether the irregularities in the original election justified the Board's refusal to accept the results of that election. That adjudication must await the outcome of the curative election and any unfair labor practice findings that ensue from it. In short, when the Board orders a new election, judicial review of the first election must abide the second election.

Heartland cites a footnote in *NLRB v. Arkema*, 710 F.3d 308, 319 n. 10 (5th Cir. 2013), holding that the court of appeals could review the Labor Board's order to hold a new decertification election even though the new election hadn't

been held yet. That case was different from this one, however, because in setting aside the first election the Board had determined that unfair labor practices had been committed in that election. In this case the only unfair labor practice found by the Board was the withdrawal of recognition from the union after the Board had set aside the result of the first election and ordered a do-over. Why that difference should allow judicial review of the first election is not explained in the footnote (or elsewhere in the *Arkema* opinion), and so there is an unresolved tension between the footnote and the Supreme Court decisions that we cited earlier that seek to encourage a prompt new election (when the original election had been set aside) by refusing to deem the order setting aside the first election appealable. But we know that a finding of an unfair labor practice by the Board is appealable; if the pre-election unfair labor practices were the only ground for setting aside the election in *Arkema*, then a determination by the court of appeals that the Board had been wrong and there had been no unfair labor practices would vindicate the result of the first election.

Although we lack jurisdiction in this case to review the Board's order setting aside the election, we have jurisdiction to adjudicate the parties' dispute over whether the employer committed an unfair labor practice in refusing to recognize the union when the union had not yet been decertified after the first election. We conclude that the employer did commit an unfair labor practice. For remember that when it withdrew recognition, the potentially decisive ballot hadn't been opened, so it couldn't be confident that it would win (by a tie vote); and this was apart from the other objections that the union raised to the conduct of the election. The Labor Board has held that "employers should not be allowed to

withdraw recognition merely because they harbor uncertainty or even disbelief concerning unions' majority status." *Levitz Furniture Co. of the Pacific, Inc.*, 333 N.L.R.B. 717, 717 (2001). "An employer may unilaterally withdraw recognition from an incumbent union only where the union has *actually lost* the support of the majority of the bargaining unit employees." *Id.* (emphasis added). (Oddly, Heartland cites a footnote in the *Arkema* case that endorses the *Levitz* standard. 710 F.3d at 320 n. 11.)

To summarize, the Board's order refusing to decertify the union and instead ordering an election do-over is outside our jurisdiction to review at this time, because the result of the old election has not been vindicated by proof that the union lost the support of a majority of the members of the bargaining unit and because a new election hasn't been held. So the union remains certified and the employer must continue to recognize it unless and until it's decertified. And since the employer has without justification withdrawn recognition of the union, the Board's unfair labor practice order is

ENFORCED.