RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0113p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RIETH-RILEY CONSTRUCTION CO., INC.,

                *Petitioner/Cross-Respondent*,

    *v.*

NATIONAL LABOR RELATIONS BOARD,

                *Respondent/Cross-Petitioner*,

LOCAL 324, INTERNATIONAL UNION OF OPERATING
ENGINEERS, AFL-CIO,

                *Intervenor* (24-2105).

> Nos. 24-2105/25-1073

_____

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board.
Nos. 07-CA-285321; 07-CA-300190; 07-CA-300191.

Argued: February 26, 2026

Decided and Filed: April 13, 2026

Before: MOORE, COLE, and MATHIS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Brian J. Paul, FAEGRE DRINKER BIDDLE & REATH LLP, Indianapolis, Indiana, for Rieth-Riley. Joel A. Heller, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for the NLRB. Amy Bachelder, LOCAL 324, INTERNATIONAL UNION OF OPERATING ENGINEERS, Bloomfield Township, Michigan, for Intervenor. **ON BRIEF:** Brian J. Paul, Stuart R. Buttrick, Ryan J. Funk, Alexander E. Preller, FAEGRE DRINKER BIDDLE & REATH LLP, Indianapolis, Indiana, for Rieth-Riley. Joel A. Heller, Elizabeth A. Heaney, Ruth E. Burdick, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for the NLRB. Amy Bachelder, LOCAL 324, INTERNATIONAL UNION OF OPERATING ENGINEERS, Bloomfield Township, Michigan, for Intervenor. Amanda K. Freeman, Glenn M. Taubman, NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION, INC., Springfield, Virginia, for Amicus Curiae.

——————————

**OPINION**

——————————

MATHIS, Circuit Judge.  In 2018, Rieth-Riley Construction Company and its employees' union representative began negotiating a new collective-bargaining contract.  After eight years of battling on the picket line and in the courts, the parties still have no agreement.  In its third appearance before this court against the National Labor Relations Board, Rieth-Riley petitions us to review the Board's findings that the company engaged in unfair labor practices in 2021 and 2022.  The Board asks us to enforce its order.  For the reasons below, we deny Rieth-Riley's petition and enforce the Board's order.

**I.**

Rieth-Riley is an Indiana-based construction company that employs around 130 to 170 operating engineers in Michigan.  Since at least 1993, Local 324, International Union of Operating Engineers, AFL-CIO (the "Union"), has been the engineers' designated union representative.

Until 2018, the Union was party to a multiemployer bargaining agreement (the "Road Agreement").  That meant it bargained with multiple companies—including Rieth-Riley—under a single collective-bargaining contract.  On May 2, 2018, four weeks before the Road Agreement was set to expire, the Union informed Rieth-Riley that it was withdrawing from the Agreement in favor of bargaining on a single-employer basis.  This created a conflict between Rieth-Riley and the Union that culminated in a lockout, multiple rounds of litigation, and a strike that continues to this day.

Rieth-Riley's conduct gave rise to an initial set of unfair-labor-practice charges filed by the Union.  On May 29, 2019, the NLRB's General Counsel, finding merit in the Union's accusations, issued a complaint against Rieth-Riley.  *See Rieth-Riley Constr. Co.*, 374 NLRB No. 13, slip op. at 6 (Dec. 16, 2024).

**A.**

As the initial complaint made its way through administrative proceedings, the parties made little progress in negotiating a successor agreement.  Amid this stalemate, some employees grew dissatisfied with the Union.  In March 2020, Rieth-Riley employee Rayalan Kent filed a petition with the NLRB's Regional Director to have the Union decertified.  Kent requested an election to determine whether the employees wanted to keep the Union as their bargaining representative.  But because the parties were still litigating the complaint against Rieth-Riley, the Acting Regional Director held the March 2020 petition in abeyance until that complaint was resolved.  *Rieth-Riley Constr. Co.*, 371 NLRB No. 109, slip op. at 2 & n.6 (June 15, 2022).  This was consistent with the Board's policy.

But the Board's policy changed.  In July 2020, the NLRB's "Election Protection Rule" went into effect.  *See id.* at 1–2.  That rule limits a Regional Director's discretion to hold decertification petitions in abeyance.  *Id.*  Sensing an opening, Kent filed a second decertification petition on August 7.  *Id.*  This time, the Acting Regional Director ordered the decertification election to go forward, concluding that the Election Protection Rule required such a result.  *Id.*  Ballots were to be submitted by mail no later than November 2, 2020.  And on November 9, 2020, at 1:00 p.m., all ballots would be opened and counted.

But on the morning of November 9, with all votes submitted, a different Regional Director came to a different conclusion about the Election Protection Rule.  *See id.*  As the Board would later clarify, the Election Protection Rule has no effect when (1) the employer is defending against unfair-labor-practice charges, (2) the Regional Director finds merit in the charges, and (3) there is a causal nexus between the unfair-labor-practice allegations and the decertification petition such that the alleged violations may have unfairly contributed to employee dissatisfaction with the union.  *Id.*; *see also Master Slack Corp.*, 271 NLRB 78, 84 (1984).  Finding that all three conditions were met here, the Regional Director dismissed Kent's decertification petitions subject to reinstatement if Rieth-Riley prevailed on the unfair-labor-practice charges.  *Rieth-Riley*, 371 NLRB No. 109, slip op. at 2.  Rieth-Riley appealed the dismissals to the Board.

**B.**

By 2021, the parties were still litigating their administrative cases—which by then included a second unfair-labor-practice complaint filed against Rieth-Riley, as well as a picketing-misconduct complaint filed against the Union. *See Rieth-Riley Constr. Co. v. NLRB*, 114 F.4th 519, 527–28 (6th Cir. 2024). And the parties were still no closer to a successor bargaining agreement.

Against this backdrop, we arrive at the events underlying the unfair-labor-practice allegations at issue here. On June 1, 2021, without bargaining with the Union, Rieth-Riley unilaterally raised bargaining-unit employees' wages—which, according to the Union, violated the company's statutory duty to bargain in good faith over essential terms of employment. And a year later, Rieth-Riley unilaterally raised wages again.

Mired in litigation and with no end in sight to the ongoing strike, Rieth-Riley and the Union decided to try again to reach a resolution. So they planned to meet on June 28, 2022, in hopes of further negotiating a successor contract.

But a week before the meeting, everything fell apart. The trouble began on June 15, 2022, when the Board affirmed the Regional Director's dismissal of Kent's decertification petitions. By that point, an administrative law judge had ruled against Rieth-Riley on the 2019 charges, and the company's appeal was pending before the Board. So unless the Board reversed the ALJ's unfair-labor-practice findings, the decertification petitions would remain dismissed and the votes uncounted.

From Rieth-Riley's point of view, the Regional Director's decision to dismiss the petitions was improper. But appealing the dismissals directly to this court was not an option. Generally, the NLRA limits our jurisdiction to reviewing the Board's orders on unfair-labor-practice disputes; it does not provide for direct review of decisions related to certification or decertification proceedings. *See* 29 U.S.C. § 159(d). Under limited circumstances, however, an employer may obtain judicial review of an otherwise unreviewable certification decision or other bargaining-unit determination. It does so by refusing to bargain with the union for the purpose of inviting an unfair-labor-practice order that we *can* review. *See Kindred Nursing Ctrs. E., LLC*

*v. NLRB*, 727 F.3d 552, 558 (6th Cir. 2013) (citing *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 154 (1941)).

Rieth-Riley purported to do exactly that.  On June 20, the company cancelled the June 28 meeting and announced to the Union that it "refuse[d] to bargain" until it "obtain[ed] judicial review" of the Board's decision to affirm the decertification dismissal.  A.R. 7295.  Rieth-Riley also informed the Union that it would not comply with pending or future information requests from the Union—including a May 25, 2022 request it was obligated to fulfill under the NLRA.  In short, negotiations were over before they had really begun.

On November 4, 2022, the NLRB's General Counsel issued a new unfair-labor-practice complaint against Rieth-Riley.  This time, the complaint alleged that Rieth-Riley violated § 8(a)(1) and 8(a)(5) of the NLRA by: (1) unilaterally granting wage increases in 2021 and 2022, (2) withdrawing recognition from the Union, (3) refusing to bargain with the Union, and (4) failing to provide the Union with requested information.  The ALJ found against Rieth-Riley on each claim.  As a remedy, the ALJ issued an order demanding that Rieth-Riley recognize and bargain in good faith with the Union, cease and desist from committing unfair labor practices, and furnish the Union with the requested information.  On December 13, 2024, the Board affirmed the ALJ's decision.

Rieth-Riley petitions for review of the Board's order.  The Board cross petitions for enforcement of its order.

## II.

The Board's decisions are "subject to limited judicial review."  *Beth Isr. Hosp. v. NLRB*, 437 U.S. 483, 501 (1978) (quotation omitted).  We review de novo the Board's legal conclusions, including the Board's interpretation of the NLRA.  *NLRB v. Starbucks Corp.*, 159 F.4th 455, 468 (6th Cir. 2025).

We review the Board's factual findings, and its application of law to the facts, for substantial evidence.  29 U.S.C. § 160(e)–(f); *Hendrickson USA, LLC v. NLRB*, 932 F.3d 465, 469 (6th Cir. 2019).  Substantial evidence "is more than a mere scintilla, but means—and means

only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Urias-Orellana v. Bondi*, 146 S. Ct. 845, 850 (2026) (citation modified). We do not disturb the Board's findings just because "we may have reached a different conclusion" in the first instance. *Frenchtown Acquisition Co. v. NLRB*, 683 F.3d 298, 304 (6th Cir. 2012).

**III.**

Rieth-Riley argues that: (1) its 2021 and 2022 wage increases to bargaining-unit employees were not unfair labor practices because the Union waived its right to bargain over them; (2) the Board erred by finding that Rieth-Riley withdrew recognition from the Union; (3) the Board erred by finding that Rieth-Riley refused to bargain in good faith with the Union; and (4) the Board's affirmative bargaining order is unenforceable. We address each argument in turn.

**A.**

The NLRA gives employees the right "to form, join, or assist" a union and "to bargain collectively through" their union. 29 U.S.C. § 157. An employer commits an unfair labor practice by "interfer[ing] with, restrain[ing], or coerc[ing] employees" in their exercise of these rights or by "refus[ing] to bargain collectively" with its employees' union. *Id.* § 158(a)(1), (5).

When it comes to collective bargaining, there are some mandatory subjects of bargaining. These include "wages, hours, and other terms and conditions of employment." *Id.* § 158(d); *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 210 (1964). Typically, an employer may not take "unilateral action with respect to any mandatory subject of bargaining." *NLRB v. Plainville Ready Mix Concrete Co.*, 44 F.3d 1320, 1325 (6th Cir. 1995). Thus, an employer may not change its employees' wages without first bargaining with their union. *Id.* at 1325–26.

The requirement to bargain, even over mandatory subjects like wages, is not absolute. "A union may waive its right to bargain." *Dupont Dow Elastomers, L.L.C. v. NLRB*, 296 F.3d 495, 507 (6th Cir. 2002). To demonstrate a union's waiver of the right to bargain, the employer must make two showings. First, the employer must prove that it provided "clear and unequivocal notice" to the union of the proposed change. *NLRB v. Henry Vogt Mach. Co.*, 718

F.2d 802, 807 (6th Cir. 1983). Second, the employer must prove that "the union consciously relinquished its right to bargain." *Dupont Dow*, 296 F.3d at 507. The union's waiver "must be clear and unmistakable." *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983). To prevent waiver, a union, after receiving proper notice, "must act with due diligence to request bargaining." *Bell Atl. Corp.*, 336 NLRB 1076, 1086 (2001).[1]

Rieth-Riley does not dispute that it implemented wage increases for bargaining-unit employees in 2021 and 2022 without bargaining with the Union. But the company claims the Union waived its right to bargain over the increases. The Board concluded that Rieth-Riley failed to prove waiver. This is a factual question that we review for substantial evidence. *See Henry Vogt Mach. Co.*, 718 F.2d at 809.

Substantial evidence supports the Board's finding that Rieth-Riley failed to provide clear and unequivocal notice of the 2021 and 2022 wage increases to the Union. The company contends that it gave sufficient notice during a 2020 hearing, when two of its executives testified before one of the Board's ALJs about the 2019 unfair-labor-practice allegations against Rieth-Riley. At the hearing, Rieth-Riley executives testified about wage increases the company unilaterally gave bargaining-unit employees in 2018 and 2020. Specifically, they explained that the company had regularly adjusted its wages to remain in compliance with the Davis-Bacon Act, a federal law requiring employers to pay prevailing wages on federal public-works projects. *See* 40 U.S.C. § 3142.

This supposed notice was far from "clear and unequivocal." *Dupont Dow*, 296 F.3d at 507 (quotation omitted). As the Board pointed out, such general statements, without essential details like timing and amounts, are too broad to qualify as adequate notice. *See San Juan Tchrs. Ass'n*, 355 NLRB 172, 176 (2010) ("More than general statements about changes that might be necessary are required [to show waiver]."). At best, the executives' testimony implied that

---

[1]Rieth-Riley claims that the Board changed the notice standard to require "a heightened 'actual and unequivocal notice' requirement." D. 53 at p.31. The proper standard, according to the company, is "adequate notice." *Id.* We disagree. True, the Board has sometimes used terms like "adequate notice" or "sufficient notice" in its waiver precedents. But it has made clear that notice is "sufficient" or adequate only when it is "clear and unequivocal." *See Sunrise Nursing Home, Inc.*, 325 NLRB 380, 387 (1998) (finding that the notice was not "sufficient" because it was not "clear and unequivocal").

future wage changes were possible—maybe even likely.  But the Board "does not require a labor organization to demand negotiations every time an employer mentions a potential, future change" to avoid the risk of waiver.  *Id.*  And because Rieth-Riley's waiver defense fails, the Board did not err by finding that the company committed unfair labor practices by granting unilateral wage increases in 2021 and 2022.

Rieth-Riley disagrees.  The company claims that it provided the Union with all the relevant information about the 2021 and 2022 wage increases during the hearing.  But the record shows otherwise.  Start with the dollar amounts.  Rieth-Riley contends that because the Davis-Bacon Act required certain wage increases, the Union had constructive notice of the amount of the wage increases.  But while the Davis-Bacon Act[2] may set the *floor* for wage increases, there remained plenty of room to negotiate for increases above what the statute required Rieth-Riley to pay.  *See, e.g.*, *Standard Candy Co.*, 147 NLRB 1070, 1073 (1964) (finding a duty to bargain over wage increases made pursuant to a new minimum-wage law that "exceeded the minimum wage rate and were granted for the purpose of maintaining wage differentials").

There are many other missing details pertaining to timing and the allocation of the increases between wages and benefits.  Rieth-Riley believes the Union should have extrapolated these specifics from the generalized testimony of the company's witnesses.  But the Board rejected that argument.  And because it did so based on evidence "that a reasonable person might accept as adequate," we will not reverse that decision.  *Frenchtown Acquisition Co.*, 683 F.3d at 304.

Rieth-Riley further argues that the Union admitted to receiving notice of the 2021 and 2022 raises in a separate proceeding before the Board when it referred to Rieth-Riley's wage increases as an "uninterrupted continuation" of the company's prior conduct.  D. 51-3 at p.65.  But a review of the Union's motion (filed in March 2021) reveals that the Union referred to the wage increases Rieth-Riley implemented in 2018 and 2020, not future wage increases in 2021 or 2022.  So this argument also fails.

---

[2]The Davis-Bacon Act applies only to federally funded projects.

**B.**

As mentioned above, an employer commits an unfair labor practice when it refuses to bargain collectively with its employees' union.  29 U.S.C. § 158(a)(5).  Thus, to comply with the NLRA, an employer may not withdraw recognition from a union unless the union has lost majority support among the employees.  *Vanguard Fire & Supply Co. v. NLRB*, 468 F.3d 952, 957 (6th Cir. 2006); *Levitz Furniture Co. of the Pac.*, 333 NLRB 717, 717 (2001), *overruled on other grounds by Johnson Controls, Inc.*, 333 NLRB No. 20 (2019).

In cases where the employer expressly withdraws its recognition, the outcome will generally turn on whether the union had lost majority support.  *See Levitz Furniture*, 333 NLRB at 717.  Here, however, Rieth-Riley acknowledges that the Union maintains an "ongoing presumption of majority support."  D. 53 at p.78.  The only question is whether Rieth-Riley withdrew recognition in the first place.  Under such circumstances, the Board must analyze whether the employer "intended to completely sever its relationship with the Union."  *Douglas Autotech Corp.*, 357 NLRB 1336, 1345 (2011).  In doing so, the Board will "examine an employer's statements and actions in context to determine whether a violation has occurred."  *Lou's Produce, Inc.*, 308 NLRB 1194, 1196 (1992), *enforced*, 21 F.3d 1114 (9th Cir. 1994).

Substantial evidence supports the Board's finding that Rieth-Riley withdrew recognition from the Union.  Taken together, the company's conduct—its unilateral wage increases over multiple years, its June 2022 letter to the Union explicitly refusing to bargain, and its failure to provide requested information to the Union—demonstrated an intent to completely sever its relationship with the Union.  Of course, a single unfair labor practice may not convey such an intent.  But Rieth-Riley committed several serious ones.  *See Arbah Hotel Corp.*, 371 NLRB No. 126, slip op. at 6 (2022) (finding that serious unfair labor practices—including unilateral changes, a refusal to bargain, and a failure to provide information—demonstrated a withdrawal of recognition); *Corson & Gruman Co.*, 284 NLRB 1316, 1317 (1987), *enforced*, 899 F.2d 47 (D.C. Cir. 1990) (finding withdrawal where, as here, the employer made both "a blanket statement to the effect that further negotiations would not occur" and an "unlawful change in [the] terms and conditions of employment"); *cf. Douglas Autotech*, 357 NLRB at 1345 (finding

no withdrawal where the employer made unilateral changes but continued to respond to information requests and offered to bargain over the effects of the changes).

Rieth-Riley nevertheless argues that its conduct, though contentious toward the Union, fell short of demonstrating an intent to completely sever the bargaining relationship. For support, it cites numerous withdrawal-of-recognition cases—but its analysis misses the mark. For example, Rieth-Riley cites *Douglas Autotech* for the proposition that "[a] mere refusal to bargain is insufficient." D. 53 at p.76. But here, the refusal to bargain was only one of many unfair labor practices Rieth-Riley committed.

Rieth-Riley further claims that "it appears the Board implicitly ruled that Rieth-Riley's technical-refusal-to-bargain defense is automatically a withdrawal of recognition as well." *Id.* at 33. But we do not read the Board's order that way. On our read, a "reasonable mind" could find that the evidence was "adequate" to support the Board's separate conclusion that Rieth-Riley improperly withdrew recognition from the Union. *See Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation omitted).

## C.

We next consider Rieth-Riley's refusal to bargain and its failure to provide requested information to the Union. As part of the duty to bargain collectively, an employer must provide the union with the "relevant information" it needs to properly perform "its duties as the employees' bargaining representative." *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 303 (1979). The underlying principle is that "[g]ood faith bargaining requires full disclosure by the parties of relevant information in order to produce informed, effective negotiations." *Rieth-Riley*, 114 F.4th at 532 (quotation omitted).

Rieth-Riley does not deny that it refused to bargain with the Union and that it failed to provide requested information. It instead purports to assert a technical refusal to bargain to obtain our review of the dismissal of Kent's decertification petitions. The only question, then, is whether Rieth-Riley properly invokes the technical-refusal-to-bargain doctrine. To answer this, we start with some background on how the doctrine works and why it exists.

Our jurisdiction to review a Board decision "is specially conferred" by the NLRA. *Am. Fed'n of Lab. v. NLRB*, 308 U.S. 401, 404 (1940). The Act determines which actions are reviewable and "prescrib[es] the manner and extent of the review." *Id.* "Except as authorized by statute, a court of appeals does not have jurisdiction to review actions of the Board." *United Nat. Foods, Inc. v. NLRB*, 138 F.4th 937, 943 (5th Cir. 2025) (quotation omitted).

The Board primarily adjudicates two types of disputes: unfair-labor-practice cases and representation cases. 29 U.S.C. §§ 159, 160. The NLRA explicitly provides for review of Board orders by the circuit courts in unfair-labor-practice cases. *Id.* § 160(e)–(f). The Board can petition a circuit court to enforce the Board's orders in these cases. *Id.* § 160(e). And "[a]ny person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought [in unfair-labor-practice cases] may obtain a review of such order" in the circuit courts. *Id.* § 160(f). The NLRA, however, contains "no provision . . . for review" of Board orders in representation disputes—like an order to hold an election or, as relevant here, a dismissal of a decertification petition. *Am. Fed'n of Lab.*, 308 U.S. at 406. Instead, the statute provides for indirect review of *some* representation orders, but only in limited circumstances. *See* 29 U.S.C. § 159(d). What circumstances?

Start with the statute's language. Under § 9(d), when an employer appeals an unfair-labor-practice violation and that violation is "based in whole or in part upon facts certified following an investigation" into a question over the certification of a union, "such certification and the record of such investigation shall be included in the transcript of the entire record" filed with the circuit court. *Id.* These disputes over certification are initiated through petitions, which allege "that a substantial number of employees" either "wish to be represented" or "assert that . . . the bargaining representative[] is no longer a representative." *Id.* § 159(c)(1)(A).

In interpreting these provisions, the Supreme Court has recognized a small category of Board certification orders over which circuit courts can maintain jurisdiction. *Boire v. Greyhound Corp.*, 376 U.S. 473, 476–77 (1964). Circuit courts can review those orders "only where the dispute concerning the correctness of the certification eventuates in a finding by the Board that an unfair labor practice has been committed." *Id.* at 477.

Consider this textbook example. Employees elect a union as their representative, but the employer believes the election was flawed. If the employer challenges the election and the Board certifies the union over the employer's objections, then the employer cannot directly appeal the Board's certification order to a circuit court—even if the employer has legitimate doubts about the Board's decision. Under § 159(d) and *Boire*, however, the employer may pursue this challenge by refusing to bargain with the union, thereby inviting an unfair-labor-practice complaint and eventually a finding by the Board that the employer's refusal to bargain violated the NLRA—which circuit courts *can* review.

Courts refer to this as a technical refusal to bargain. It operates like a collateral attack on the Board's certification order. The employer has refused to bargain not necessarily because negotiations have broken down. Instead, it questions whether the union's certification was lawful. And if in the end we agree with the employer and conclude that the Board erred in its certification decision, then the employer could not have violated its duty to bargain because it never had one. In effect, then, a technical refusal to bargain is a jurisdictional hook that allows the employer to "argue the invalidity of the union's certification as an affirmative defense to the unfair labor practice charge." *Terrace Gardens Plaza, Inc. v. NLRB*, 91 F.3d 222, 225 (D.C. Cir. 1996).

The technical-refusal-to-bargain doctrine may apply to other scenarios. But caselaw suggests there must be, at the very least, a "bargaining unit determination" made by the Board, such that the decision creates, clarifies, or eliminates a bargaining obligation. *See Kindred Nursing Ctrs.*, 727 F.3d at 558. And relevant here, "[u]ntil a union is decertified following an election, the company's obligations to it are the same as they had been before the election and if it spurns those obligations it is guilty of an unfair labor practice." *Heartland Hum. Servs. v. NLRB*, 746 F.3d 802, 804 (7th Cir. 2014) (Posner, J.). This is consistent with the text of § 9(d). It is also consistent with "the purpose of [§] 9(d)," which is "to provide for review in the courts only *after* the election has been held and the Board has ordered the employer to do something predicated upon the results of the election." *Boire*, 376 U.S. at 478–79 (emphasis added) (citation modified).

Applying these principles, Rieth-Riley's attempt to invoke our jurisdiction over the dismissal of the decertification petitions fails.  The company told the Union that it "refuse[d] to bargain" only to "obtain judicial review" of the dismissal of Kent's decertification petitions.  A.R. 7295.  But that dismissal just maintained the status quo; it did not result in the creation, clarification, or elimination of a bargaining obligation.  *See Heartland Hum. Servs.*, 746 F.3d at 804.  In other words, the dismissal did not require Rieth-Riley "to do something predicated upon the results of an election." *Am. Fed'n of Lab.*, 308 U.S. at 411 (quotation omitted).  Rather, the company's obligations to the Union were "the same as they had been before the election and . . . it spurn[ed] those obligations," making Rieth-Riley "guilty of an unfair labor practice."  *See Heartland Hum. Servs.*, 746 F.3d at 804.

Consider that any error in dismissing the petitions would not eliminate the company's preexisting duty to bargain with the Union.  Only after the ballots were counted, only if the employees voted for decertification, and only if the Board was satisfied with the validity of the election would Rieth-Riley be relieved of its bargaining duties to the Union.

The NLRA does not grant us jurisdiction—not even indirectly under § 9(d)—to provide the judicial review Rieth-Riley seeks.  And because Rieth-Riley's refusal to bargain cannot confer us with jurisdiction over the Board's affirmance of the dismissal of the decertification petitions, there is nothing *technical* about it.  It is simply a violation of the NLRA. *See id.*

Rieth-Riley encourages us to look beyond the classic technical-refusal-to-bargain scenarios.  It cites circuit cases granting review of representation decisions outside the standard context of certification or decertification following an election.  None of these cases, however, addressed the jurisdictional question before us.  And "[w]hen a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011); *see also Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

But even if we assume that those courts properly exercised jurisdiction, those cases do not persuade us that jurisdiction is appropriate here.

Take *NLRB v. Accurate Web, Inc.*, 818 F.2d 273 (2d Cir. 1987) (per curiam), and *NLRB v. Gebhardt-Vogel Tanning Co.*, 389 F.2d 71 (7th Cir. 1968). When those cases were decided, an employer could withdraw recognition from a union based solely on its good-faith belief that the union had lost majority support. *See Gebhardt-Vogel*, 389 F.2d at 72. And because a pending decertification petition was evidence of that good-faith belief, dismissing a petition would potentially deprive an employer of a defense to the unfair-labor-practices allegations. But since the Board's 2001 decision in *Levitz Furniture*, employers must show that the union no longer has majority support; their belief that the union's support has dissipated will not suffice. 333 NLRB at 717.

Consider next *Maccabees Mutual Life Insurance Co. v. NLRB*, 757 F.2d 767 (6th Cir. 1985) (per curiam), and *David Wolcott Kendall Memorial School v. NLRB*, 866 F.2d 157 (6th Cir. 1989). These are unit-clarification cases where the Board's representation decision controlled the outcome of the unfair-labor-practice proceedings. *Maccabees*, 757 F.2d at 768–69 (finding that an employer could not escape its bargaining obligations by classifying a group of employees as "managerial"); *Kendall Mem'l*, 866 F.2d at 159 (same). Put simply, these were "bargaining-unit determination[s]," and the employers could therefore seek court review via a technical refusal to bargain. *See Kindred Nursing Ctrs.*, 727 F.3d at 558.

The best case for Rieth-Riley is *Transportation Maintenance Services, LLC v. NLRB*, 275 F.3d 112 (D.C. Cir. 2002). There, a decertification election had already concluded, and the results were impounded pending Board certification. *Id.* at 114. Over a year later, the employee who initiated the decertification petition asked to withdraw it, and the Board granted his request. *Id.* Without addressing the jurisdictional question, the D.C. Circuit reversed the Board's decision to grant the withdrawal request. *Id.* at 116.

Despite some similarities between the two cases, *Transportation Maintenance* does not help Rieth-Riley. That case did not involve a decertification *dismissal*; it involved a decertification *withdrawal*, which is final. Indeed, in ruling against the employer, the Board

"expressly closed the decertification case," sealing the incumbent union's status as bargaining representative. *Transp. Maint. Servs., LLC*, 331 NLRB 1050, 1050 (2000). The effect on the parties' bargaining relationship was as if the Board counted the votes and certified the union as the winner, which would qualify for indirect review under § 9(d). Nothing so final happened here. Rieth-Riley's decertification petitions were merely dismissed subject to reinstatement pending resolution of the unfair-labor-practice charges underlying *Rieth-Riley Construction Co. v. NLRB*, __ F.4th __, 2026 WL 948312 (6th Cir. Apr. 8, 2026). The votes remained live, with certification still in the balance. All Rieth-Riley had to do was prevail in the unfair-labor-practice proceedings initiated in 2019. And it has had a full and fair opportunity to do so.

Finally, Rieth-Riley argues that the Board accepted the company's technical-refusal-to-bargain arguments. Following the ALJ's decision, the parties filed various exceptions with the Board. Relevant here, the General Counsel excepted to the ALJ's failure to enter a make-whole damages award for the lost opportunity to bargain. The Board denied this request, explaining that "to do so would require overruling *Ex-Cell-O Corp.*, 185 NLRB 107 (1970)." A.R. 7590. That decision rejected enforcement of a make-whole remedy against an employer in a technical-refusal-to-bargain case. *Ex-Cell-O*, 185 NLRB at 110. So Rieth-Riley concludes that the Board, by analogizing to *Ex-Cell-O*, implicitly endorsed the company's technical-refusal-to-bargain arguments as valid.

This argument reads too much into the Board's remedy determination. *Ex-Cell-O*'s suspicion toward certain make-whole remedies was rooted in two major concerns. The first was that, in a technical-refusal-to-bargain case, an employer is often acting in good faith, incurring an unfair-labor-practice violation simply to ensure it gets its day in court. *See id.* at 109 ("Where the wrong in refusing to bargain is, at most, a debatable question . . . the imposition of a large financial obligation . . . may come close to a form of punishment for having elected to pursue a representation question."). But the Board was equally concerned about imposing make-whole remedies any time a bargaining agreement had lapsed with no successor agreement in place. *Id.* at 110. The Board concluded that, to calculate damages based on a "*presumed* contractual agreement" that "never existed" would be too speculative. *Id.* Thus, we do not read the Board's reluctance to impose a make-whole remedy here as an endorsement of Rieth-Riley's technical-

refusal-to-bargain arguments.  And even if it were, the Board's contrary view could not cure our lack of jurisdiction over the decertification dismissals.

In sum, none of the Board's unfair-labor-practice findings was "based in whole or in part" on the decertification petition dismissals.  29 U.S.C. § 159(d).  And because Rieth-Riley's longstanding obligations to the Union remained the same—whether or not the Board dismissed the petitions—it could not test those obligations by refusing to bargain.

**D.**

Rieth-Riley argues that the Board improperly expanded the ALJ's bargaining order.  But Rieth-Riley failed to raise this challenge before the Board.  So we lack jurisdiction to consider it. *See Quickway Transp., Inc. v. NLRB*, 117 F.4th 789, 818 (6th Cir. 2024).

Section 10(e) of the NLRA states: "No objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."  29 U.S.C. § 160(e).  This jurisdictional bar applies to objections to actions taken by the Board sua sponte, *see Van Dorn Plastic Mach. Co. v. NLRB*, 881 F.2d 302, 306 (6th Cir. 1989), that could have been raised in "a petition for reconsideration or rehearing," *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 666 (1982).

Rieth-Riley did not object to the Board's supposed expansion of the ALJ's bargaining order in a petition for reconsideration or rehearing.  Nor has the company identified any "extraordinary circumstances" that would excuse its failure to do so.  29 U.S.C. § 160(e).

**IV.**

For the reasons above, we **DENY** Rieth-Riley's petition for review and **GRANT** the Board's cross-application for enforcement of its order.